## Patton *versus* Conn et al.

114 183
120 178
114 183
151 402

1. A daughter cannot recover wages for services rendered in the nursing and care of her father, except on clear proof of an express contract to that effect. The same rule obtains when the daughter is an adult and married. Although after marriage her services belong to her husband, yet if the wife, under the circumstances owing to the absence of an express contract, might not recover, the husband can have no higher right.

2. If a wife renders services gratuitously, for which she is afterwards rewarded by a voluntary gift, which her husband received, he is legally bound to restore it to her. He may, therefore, prefer her to other creditors, by confessing judgment to her for the amount thus due her.

May 26th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ. STERRETT, J., absent.

ERROR to the Court of Common Pleas of *Juniata county :* Of July Term 1885, No. 132.

This was a feigned issue, wherein Rebecca J. Patton was plaintiff and Daniel Conn and other creditors of Thomas Patton were defendants.

The following are the facts as they appeared on the trial before BARNETT, P. J.: Thomas Patton, on February 6th, 1884, being indebted to Daniel Conn and others, the defendants in this case, gave to Alfred J. Patton, in trust for his wife, Rebecca J. Patton, the plaintiff, his judgment note for $1,695. This note was entered of record in the Common Pleas of Juniata County, an execution issued thereon, and the personal and real estate of Thomas Patton sold. Daniel Conn and others had in the meantime obtained judgments and disputed the right of Rebecca J. Patton to the proceeds of the sales. To determine the validity of her judgment and her right to participate in the distribution of the funds arising from these sales, this issue was framed by the court.

It was in evidence that the sum of $1,695, the face of the note, was made up of several sums, *inter alia*, $500, which the heirs of Robert Patterson, her father, agreed to give her for what they called the care and keeping of their father for about seven years. Thomas Patton was the administrator of his father-in-law. In his account as administrator, under advice of counsel, he claimed credit for the said $500 for the care and keeping of the decedent. His account was confirmed. He never paid this sum to his wife, but included it in the said judgment note. The note also included the amount due his

[Patton *v.* Conn.]

wife as her interest in the real estate of her father, which he had received and never paid her.

The court, *inter alia*, charged the jury as follows : The plaintiff also claims that because she cared for her father during the last six or seven years of his life, the other heirs agreed that she should receive from his estate five hundred dollars more than they. But if any person was entitled to receive these five hundred dollars, it was her husband, he being entitled under the law to the earnings of his wife, and he could not agree that his money should be received by his wife to the prejudice of his creditors, and it appearing in evidence that Mr. Conn was his creditor at that time, these $500 could not be considered as against him to belong to his wife, and therefore could not legally be included in her judgment against her husband. It is an axiom of the law that fraud taints and vitiates everything it touches ; the law does not stop to sift out the fraudulent sums included in a judgment and declare the remainder good ; but as poison permeates the whole mass with which it is mixed and renders the whole poisonous, so a judgment cannot be fraudulent in part and good as to the remainder, and if it is knowingly confessed for more than is owing, with the intention of depriving other creditors of the means of receiving payment, the whole judgment becomes fraudulent and void. But, on the other hand, if the judgment is innocently confessed for more than is legally owing, either through mistake of calculation or from an honest belief that the wife was entitled to demand and receive what the law declares is not hers, then there would be error or mistake, but not fraud, in conferring the judgment ; and no part of the judgment being fraudulent, the error or mistake might be corrected and the judgment reduced to its proper amount ; just as if, in the tendered payment of a debt, counterfeit notes or coin have been innocently included in the aggregate amount, they may be separated and thrown out from the genuine money, and the actual payment reckoned according to the true remainder. If the jury, therefore, should find from all the evidence in the case, that this sum of $500 was fraudulently included in the judgment to prevent other creditors from collecting their claims, then the whole judgment in dispute, for the purpose of increasing the judgment, is fraudulent and your verdict should be for the defendants. But if you should find from the evidence that these $500 were included in the judgment through mistake, in the belief that the wife was honestly entitled to claim this money by reason of the agreement of the heirs, then the whole judgment would not, for that reason, be fraudulent and void, and the jury should consider the other items included in it. . . . . . As to the pro-

ceeds of the mill, if you are satisfied that the wife was entitled to receive the proceeds of the mill, and the husband got the proceeds instead of paying it over to her, and is indebted to her in that amount, then that would be a proper subject to add.

Verdict for the plaintiff in the sum of $215.12, and judgment thereon; whereupon the plaintiff took this writ assigning for error, *inter alia*, the portion of the charge above set forth.

*Ezra D. Parker* (*A. J. Patterson* with him), for plaintiff in error.—Neither the daughter nor her husband held a legal claim against the estate of her father for services: Houck *v.* Houck, 3 Out. 552; Leidig *v.* Cowri's Executors, 11 Mc. 534.

The gift of her sisters received by her husband, even though it was through his account as administrator, was her individual property, and was a valid and just debt due her by him: Kepler *v.* Davis, 30 P. F. S. 154.

The court erred in submitting to the jury the question of the legal right of the wife to any of the proceeds of the will: Rush *v.* Vought, 5 P. F. S. 437; John Maloney Estate, 42 Leg. Int. 276.

The mill from which the proceeds were derived belonged to the wife and her two sisters, by descent from her father. It is error to submit questions of law to the jury: Cook *v.* Mackrell, 20 P. F. S. 12; Keating *v.* Orne, 27 P. F. S. 89.

*B. F. Jenkin* (*Jeremiah Lyons* with him), for defendants in error.—Real and personal estate paid for with a wife's earnings or savings does not give her a trust estate in the property: Raybold *v.* Raybold, 8 Harris, 308; Bucher *v.* Ream, 18 P. F. S. 421; Speakman's Appeal, 21 P. F. S. 25.

Money thus acquired is not the property of the wife, within the meaning of the Act of 11th April, 1848. Her industry and frugality enure to the benefit of her husband. Her earnings belong to her husband: Bucher *v.* Ream, 18 P. F. S. 421. Mrs. Patton did not avail herself of the Act of 3d of April, 1872, so as to make her separate earnings her own.

The argument of plaintiff in error is that the $500 was a gift by her sisters, but this position cannot be maintained, because it was a contract to pay for keeping, attention and care. The husband's means had to supply the board, etc.; and even if the wife did the attention and care, both were his, and whatever was to be paid forth was his and not hers: Schoch's Adm'rs *v.* Garrett, 19 P. F. S. 144; Horton's Appeal, 13 Norris, 62; Amey's Appeal, 13 Wright, 126; Smith *v.* Milligan, 7 Wright, 107.

The relationship of son-in-law and father-in-law is not one which repels the presumption that the keeping was to be without reward, so that even if there had been no agreement to pay for the father-in-law's keeping the law would have implied it.

Mr. Justice CLARK delivered the opinion of the court, October 4th, 1886.

It is a most familiar rule of the law, that where services are rendered by one person for another, at his request, a promise will be implied to pay the price ; but this implication may be rebutted by proof of such a relation existing between the parties as repels the idea of a contract.

Therefore, a daughter cannot recover wages for services rendered, in the nursing and care of her father, except on clear proof of an express contract to that effect. The same rule obtains, when the daughter is an adult and married. Although after marriage her services belong to her husband, yet if the wife under the circumstances owing to the absence of an express contract, might not recover, the husband can have no higher right: Houch *v.* Houch, 3 Out., 552.

It is plain that Rebecca J. Patton never had, or pretended to have, any claim for services against her father's estate, for no express contract to that effect is even alleged. In the care and nursing of her father, she doubtless rendered efficient and faithful service, but, in so doing, she simply performed a daughter's duty ; a duty to the performance of which she was prompted by the affection which was due to her father. It is equally plain, that her husband never set up any such claim, either in his own interest, or in behalf of his wife, and if he had, the law would have denied him any remedy for its recovery.

The agreement, in reference to the five hundred dollars, was made after Robert Patterson's death, between the other children and heirs of the deceased ; they agreed they would give to their sister, Rebecca, five hundred dollars. They owed her nothing ; she said she thought she ought to have something, for taking care of her father, and they said they would give her five hundred dollars. Her husband took credit for this amount of money in the settlement of his account, as administrator ; the credit was not claimed, nor allowed, as a debt due to him, or to his wife, from the estate of Robert Patterson ; it would appear rather, to have been in the nature of a gift to her by her sisters, which by agreement was executed in the settlement and distribution of the estate. It was " for taking care of her father," but it was nevertheless a voluntary gift ;

made in consideration of services, which from feelings of natural affection had been gratuitously rendered.

It is a matter of no consequence that the husband, through the advice of counsel, was induced to believe the money was his; that did not change the ownership of the money.

As a general rule, the husband is entitled to receive for his wife's services, but when those services are gratuitously rendered he has no such right; if she is afterwards rewarded by a voluntary gift, her husband can have no more claim to it, than a stranger.

Thomas T. Patton, having under these circumstances received his wife's money, was legally bound for its restoration to her. The law held him liable to her for payment thereof, and it was competent for him to secure it to her in the note which he gave for her use.

The mill, it is admitted, belonged to Rebecca J. Patton and her two sisters by inheritance from their father, as tenants in common, they were therefore entitled to the proceeds. If Thomas T. Patton received his wife's share of the proceeds, it was his duty to account to her for that share; the only question for the jury, in respect to this item, is whether or not he received any part of her share of the proceeds, and if so, how much he did receive.

> The judgment is reversed and a *venire facias de novo* awarded.