## Murphy *v.* Corrigan, Executrix, Appellant.

*Decedents' estates—Claim for services—Evidence—Burden of proof—Parent and child—Master and servant.*

Clear and unequivocal evidence of an express contract is necessary to support actions by children against the estates of their parents for services rendered to the latter while living with and supported by them.

Mere declarations by a father that he appreciated his daughter's services, and that she would be well paid as she would get his property at his death, are insufficient to sustain an action by the daughter against her father's estate to recover for domestic services.

Argued Oct. 26, 1893. Appeal, No. 130, Oct. T., 1893, by defendant, Margaret Corrigan, executrix of James Corrigan, deceased, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1892, No. 472, on verdict for plaintiffs, Peter P. Murphy and Mary S., his wife, in right of wife. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ. Reversed.

Assumpsit for domestic services. Before McCLUNG, J.

At the trial plaintiff claimed to recover for services rendered to her father as housekeeper. The evidence showed that prior to 1888, plaintiff, with her two illegitimate children, lived with her father and kept house for him. In 1888 plaintiff married Peter P. Murphy. All of the family continued to live together until 1890, when the father went to board at a hotel, and in April, 1891, married Margaret Hughes. By his will he left $2,000 in trust for his daughter for her life. Plaintiff sought to establish an express contract on part of her father to pay her wages, and for this purpose called five witnesses.

The substance of the testimony is stated in the opinion of the Supreme Court.

The evidence of Mrs. Haney in cross-examination, referred to in the opinion of the Supreme Court, but not quoted, was in part as follows: " A. He came, and was telling me something; he was irritable and cross; Mollie had been crying and wanting clothing or something from him, and he had refused, and she told him that he ought to give her wages,—that he must give her wages, or if he refused to give her wages, she

would leave and go and live out and get wages elsewhere ; and
he wouldn't permit her to go ; he said he would give her wages
and good wages ; he would give her all he was worth, but she
must wait until his death.   He was miserly and wanted to hold
on to the money while he lived. . . . Q. Then why do you say
that she wanted and how do you know that she wanted wages ?
A. I told you he told me so.   Q. She wasn't present ?   A. No,
sir ; he came right over from where she had been crying, and
demanding wages from him,—wanting wages.   Q. And he told
you that she had been crying ?   A. And wanted wages, yes,
sir.   Q. And did he tell you that he didn't give her any ?
A. Yes, of course, he told us that he said that he would give
her all in lieu of wages, but she must wait.   Q. Was Mrs.
Murphy present at any of these conversations ?   A. No, I think
not, because when he would come over to our house, he didn't
bring her with him.   Q. Did he say to you what he had told
her?   A. Yes, he said he told her that she would have to wait
for wages until his death, and then she would get all he was
worth."

Binding instruction for defendant was refused. [1]
Verdict and judgment for plaintiff for $2,800.

*Error assigned* was above instruction, quoting it.

*John D. Watson, Daniel Harrison* with him, for appellant,
cited : Zimmerman v. Zimmerman, 129 Pa. 229 ; Graham v.
Graham, 34 Pa. 475 ; Houck v. Houck, 99 Pa. 554; Miller's
Ap., 100 Pa. 568 ; Patton v. Conn, 114 Pa. 183 ; Carpenter
v. Hays, 153 Pa. 433.

*A. V. D. Watterson, A. B. Reid* with him, for appellee,
cited : Geary v. Geary, 67 Wis. 248.

Opinion by Mr. Justice McCollum, April 9, 1894:
The burden was on the plaintiff to prove, by competent evi-
dence, that the services for which she claimed compensation in
this action were rendered under an express contract with the
decedent to pay for them a stipulated sum, or what they were
worth.   It was for the court to determine whether the evidence,
if believed, was sufficient to establish such a contract, and it

was for the jury to decide whether it was credible. The learned trial judge charged that in order to recover it was necessary for the plaintiff to prove by clear, direct and positive evidence that there was an express contract to pay for the services, and in this he was in accord with the well settled rule or principle governing actions by children for services rendered to their parents. If any error was committed by him it was in holding that the evidence produced by the plaintiff in support of her claim was sufficient to justify the jury in finding that her services to her father were rendered under an express contract. It is claimed that in so doing he erred, and we are therefore required to examine and consider the evidence and to determine whether it has the qualities which have been repeatedly adjudged to be essential to sustain an action of this character.

The facts appearing in the undisputed testimony are, that the plaintiff after the death of her mother lived with and was supported by her father, as before, until her marriage in 1888; that during that time she kept house for him, and, in the language of one of her witnesses, "they lived happy together like any father and daughter would." She was his only child, and before the marriage referred to had two children who like herself were cared for and supported by him. In conversation with his neighbors he often spoke approvingly of her services and declared that she would be well paid for them, as, at his death, she would have all his property. The learned judge conceded that declarations of this nature did not create or tend to establish the relation of master and servant between the father and daughter in respect to the services sued for, but he thought that Mrs. Haney's testimony contained an admission by the former that they were rendered under an express agreement with him that the latter should be paid for them at his death. Five witnesses were called to support her claim. None of them testified to being present at any conversation between the father and daughter in relation to her services or the payment of wages for them. All the testimony on this point consisted of the decedent's declarations to his neighbors which evinced his appreciation of his daughter's services and his intention that she should have, at his death, by inheritance or by will, all that he was worth, but there was no element of contract in it unless it can be found in what Mrs. Haney testified he

told her in 1880. She was the plaintiff's first and last witness, and when first called she testified she told the decedent he ought to pay his daughter wages—" to pay her a certain sum every week, and he would say, then, she would get wages and good wages, but she would have to wait until his death. He always said that until the time of his second marriage, and he was then an old man, 77 years old." When she was recalled and particularly interrogated as to a conversation with him respecting his daughter's demand for wages, she testified as follows : " On one occasion he was talking to me ; he was angry and he said that Mollie was crying—wanting this and that and wanting something else, and had finally asked him for wages and said if he didn't give it to her she would go and live out, if he did not give her wages. Then I suggested that he should give her wages, and he always said that he would give them to her, but she would have to wait until his death." The testimony we have quoted was elicited on the examination in chief, and it was not essentially modified on the cross-examination. There were some expressions in the latter which at first blush seemed to indicate that the decedent admitted to Mrs. Haney that he had agreed or promised to pay his daughter wages for her services, but a careful consideration of her entire testimony has satisfied us that it was substantially the same as the testimony of the other witnesses, which the learned judge rightly held did not prove or tend to prove that there was an express contract between the parties. To hold that there is evidence in this case to support a finding that there was such a contract, is to depart from the well settled rule governing actions of this nature. It is a reasonable and just rule, and experience has shown that it is necessary to protect the estates of the dead from claims usually preferred by children who are dissatisfied with the disposition their parents have made of their own property.

As there was no proof in this case of an express contract under which the services sued for were rendered, it is quite probable that the litigation was born of the feeling of the daughter and her friends in the neighborhood that the decedent should not have married again, or made a will, and thus diminished the inheritance she would have received if he had remained a widower and died intestate. It seems that the jury shared this

feeling, as they gave her for her services nearly three dollars a week more than she charged for them in the account filed with her statement of claim.

It appears from the record that the appellant offered the decedent's will to show what provision he made in it for his daughter, and that it was rejected on her objection that it was irrelevant. It is not likely that any objection would have been made to its admission, or that it would have been offered, if it had cut her off entirely or with a mere pittance.

We are satisfied, upon a careful consideration of the case, that it is another illustration of the wisdom of the rule which requires clear and unequivocal evidence of an express contract to support actions by children against the estates of their parents for services rendered to the latter while living with and supported by them.

The specification of error is sustained.

Judgment reversed.