## Teller's Estate.

*Decedents' estates—Stale claims—Claims for professional services in procuring purchasers of real estate and attending settlements for decedent in her lifetime.*

1. Claims against decedents' estates are always scrutinized with care by the Orphans' Court, especially when they are not founded on an express contract, but on a *quantum meruit;* the burden of proof rests heavily on the claimant and the presumptions are against him.

2. Attorneys presented a claim against the decedent's estate for professional services touching the sale of real estate and attending some forty-two settlements. Most of the properties in question were sold in 1919 and 1920; there were two settlements in 1921, three in 1922 and two in 1923. The owner, the decedent, died Sept. 12, 1923. The mothers of the attorneys had a 1/18th interest each in the properties in question. The attorneys made no claim for services during the lifetime of decedent, and there was some question whether the services rendered had not been given without expectation of remuneration by reason of their mothers' interests. There was nothing to show that decedent knew they were acting on her behalf. The Auditing Judge, Thompson, J., disallowed the claim, on the ground that it was stale and the evidence insufficient to sustain it: *Held*, no error.

Exceptions to adjudication. O. C. Phila. Co., July T., 1924, No. 2435.

The facts appear from the adjudication of the Auditing Judge, THOMPSON, J., which was, in part, as follows:

"In my adjudication of the account of the executors in this estate, filed Sept. 23, 1924, there was reserved the sum of $7500 to meet the claim of Lionel T. Schlesinger and Adolph T. Kohn, and subsequently, on Oct. 10 and 13, 1924, a hearing was had on the same, at which 223 pages of testimony were taken.

"The claim is for $4200, that being 10/18ths of a fee of $7500 alleged to be due claimants by the owners of the real estate hereinafter mentioned, and is based, not on an express contract between claimants and decedent, but upon

an alleged state of facts, whereby the law implies an obligation on the part of the decedent to pay claimants.

"From the testimony taken it appears that Benjamin and Joseph Teller, composing the firm of Teller & Bro., were during their lifetimes jointly the owners of valuable Philadelphia real estate. In 1900 Joseph Teller died. Under the terms of his will, his one-half interest in the said real estate was thereafter held in trust by Horace Loeb and Oscar B. Teller as trustees for his daughter for life. In 1904 Benjamin Teller died, leaving his entire estate to his wife, Jennie Teller, the decedent, absolutely. Thereafter, title to the real estate in question was held, one-half by Jennie Teller absolutely and the other half by Horace Loeb and Oscar B. Teller, trustees under the will of Joseph Teller, deceased. Jennie Teller, the decedent, in addition to her one-half interest as sole heir of Benjamin Teller, had a one-ninth interest under the will of Joseph Teller in his one-half share, giving her 10/18ths interest in all the properties. The other interests in the Joseph Teller estate were as follows: Martha Loeb, sister of the decedent and wife of Horace Loeb, 1/9th; Mrs. Jacob L. Langsdorf, daughter of the decedent, 1/9th; Mary Hirsch, sister of the decedent and sister-in-law of Horace Loeb, 1/9th; Estate of · Oscar B. Teller, 1/9th; Estate of Jacob Teller, 1/9th; Mrs. A. Schlesinger, mother of Lionel T. Schlesinger, one of the claimants, 1/9th; Mrs. Flora Kohn, mother of Adolph T. Kohn, one of the claimants, 1/9th; Claudine Rosenbaum, 1/18th; Louise H. Herzberg, 1/18th.

"From the date of Benjamin Teller's death in 1904, Horace Loeb, who was the brother-in-law of Jennie Teller, the decedent, continuously acted as her attorney-in-fact and man of affairs. In that capacity and as executor and trustee under the will of Joseph Teller, acting first with Oscar B. Teller and later as surviving executor and trustee, he placed the entire management of the properties in question in the hands of former employees of Teller & Bro., who thereupon organized the firm of Barber, Hartman & Company. It was arranged that Barber, Hartman & Company were to receive the ordinary commission for the collection of rent and 1 per cent. on sales, which was the then prevailing rate.

"On Jan. 26, 1919, Joseph Teller's daughter died and, the trusts under his will having terminated, an account was filed of the personal estate. The claimants, who were the nephews of Joseph Teller, were retained as counsel for the purpose of filing and auditing the account and were paid a fee of $2000 for their services. Subsequently, because of the increased activity in the real estate market, it became possible to dispose of the real estate owned by Jennie Teller and the heirs of Joseph Teller. From 1919 to 1923, inclusive, sales of real estate were made from time to time by Barber, Hartman & Company under the instructions of Mr. Loeb, and deeds therefor were made by Jennie Teller, the decedent, owning a one-half interest absolutely, and Mr. Loeb, as the surviving executor and trustee of Joseph Teller, deceased. Mr. Loeb instructed Barber, Hartman & Company to submit all offers to the claimants, Messrs. Schlesinger and Kohn, because of the fact that their mothers respectively had a 1/18th interest in each of the properties. The claimants never at any time represented the decedent, nor were they ever personal counsel for Mr. Loeb. Barber, Hartman & Company, accordingly, not only consulted Mr. Loeb with regard to the sale of the real estate, but also consulted the wishes of the claimants, and this led to a course of practice in accordance with which all offers received for any of the properties and developments in connection with the sale thereof were communicated by Barber, Hartman & Company to both Mr. Loeb and the claimants.

Teller's Estate.

"The claimants, particularly Lionel T. Schlesinger, who was active in real estate matters, thereupon interested themselves in securing offers for the real estate, and in a number of instances negotiated with prospective purchasers. But in every instance ultimately referred such prospective purchasers to Barber, Hartman & Company, with whom the agreements of sale were invariably made. Barber, Hartman & Company notified both Mr. Horace Loeb and the claimants of the dates fixed for settlements, and most of the settlements were attended by the claimants, who, because of their knowledge of the family history, were enabled to furnish the usual affidavit with respect to the date of death of Joseph R. Teller; that he had no child or children born after the date of his will and left no widow surviving him; that Benjamin F. Teller died in 1904, without children born after the date of his will; that Jennie Teller had not remarried since the death of her husband, etc. One of the claimants also frequently furnished an affidavit that the trusts under the will of Joseph Teller were still active in order to obviate the necessity of having the deed signed by all of the heirs on the theory, apparently, that the title was in Mr. Loeb, the surviving trustee, and that the interests of the heirs were only in the proceeds. The claimants were never called upon to render services of a strictly legal character. Nor were their services, either as brokers or as attorneys, ever engaged by the decedent or by Mr. Loeb or by Barber, Hartman & Company. Most of the properties which were sold were sold in the years 1919 and 1920; only three of the eighty-six properties were sold in 1922; three in 1923, and none whatever in 1924. No notice was ever given by claimants to the decedent or to Mr. Loeb or to Barber, Hartman & Company that they were acting for any one other than their own mothers or that they expected to be paid for their services by the decedent or any of the other heirs. No claim was at any time made by the claimants upon the decedent or Mr. Loeb or Barber, Hartman & Company, and no bill was ever rendered prior to the decedent's death in September, 1923. Following her death, no such notice was given, nor was any such claim made, until shortly prior to the date of the audit, Oct. 10, 1924. From the list of properties offered in evidence by claimants, showing the dates of settlement and sale prices, it appears that eighty-six properties were sold for approximately $400,000, and that most of the parcels were settled for in 1919 and 1920. According to the list, there were only forty-two, not fifty-four, settlements as claimed. The number fifty-four is probably made up by counting in a number of small properties all settled for at one settlement. There were twenty-one settlements in 1919, thirteen in 1920, two in 1921, three in 1922, two in 1923 and none in 1924.

"In my judgment, the claim is a stale one, and under the law as applicable to the facts as above found, claimants are not entitled to recover. Whether the activity of the claimants was due to the fact that their respective mothers had each a 1/18th interest in the real estate in question, or for any other reason, is immaterial, so long as the decedent had no knowledge that they expected her to pay them. She had employed competent people to sell her interest in the real estate in conjunction with the other owners, and she had no need of the services of the claimants, whose activity she could not prevent, as she was not the sole owner of the real estate. If other interests employed them, the decedent must necessarily have received indirectly such benefits, if any, that resulted therefrom, but this does not impose any liability on one who did not employ them, and my judgment is that, under the facts of this case, an express contract with decedent must be proven, or such a state of facts presented that shows conclusively that decedent not only knew of the services of the claimants, but accepted them as made on her behalf. This has not been shown by the testimony.

Teller's Estate.

"Claimants argue that they never rendered a bill or gave notice of intention to do so because they wished to wait until all the properties had been sold. There was no connection, however, between the sale of any one parcel and the others. Each was a separate transaction and checks were distributed among the heirs as each property was sold, without reference to the sale of any other property. This argument is further answered by the fact that all the properties have not yet been sold. It nowhere appears that claimants ever made any demand on the remaining 8/18ths interests for compensation or received anything from them, and why the proportionate interests of the decedent in the joint properties is asked to contribute is left to conjecture. Claimants are experienced members of the bar in this city, and if they had notified the decedent in 1919, immediately after the first sale, they could have had a proper understanding with the decedent as to whether they were representing her or the other owners. But to allow four years to elapse, the decedent to die, and then present a claim which could and ought to have been made in her lifetime, requires, in my judgment, the strongest kind of proof to sustain the same.

"I have been referred to no case where a recovery has been had against one who has only a partial interest in the subject-matter and who did not know that the services rendered were for his direct benefit, nor where he did not adopt as his own the services so rendered to his co-owners.

"For the reasons given above, the claim of Messrs. Schlesinger and Kohn must be rejected. See Com. v. City Trust, &c., Co., 38 Pa. Superior Ct. 536."

To this ruling claimants excepted.

*John R. K. Scott* and *William T. Connor*, for exceptants.

*Fox & Rothschild*, contra.

GEST, J., July 3, 1925.—The Auditing Judge, after a very fair review of the voluminous testimony, has found the facts adversely to the exceptants, and, in accordance with well-settled practice, his findings have the effect of the verdict of a jury, clear error not having been shown.

It may be that the services rendered by the claimants in connection with the sales of real estate were beneficial to the decedent, but that is not enough without more. No notice was given to the decedent that the claimants were acting for her in a professional capacity, or expected to be paid for their services; no claim was made on her, or indeed on any of the parties in interest, and no demand for compensation was made until after the decedent's death and very shortly before the audit of her executor's account.

This is a stale claim. Most of the properties were sold in 1919 and 1920; there were only two settlements in 1921, three in 1922 and two in 1923. The decedent died on Sept. 12, 1923. Why was no claim made on her before her death? The only answer vouchsafed is that the claimants were waiting until all the properties had been sold; but that is entirely insufficient to explain or to excuse the delay. Indeed, all the properties have not yet been sold, and may not be sold for years to come. The sufficient reply is that these sales were separate transactions, having no connection with one another. As each property was sold, the proceeds were divided among the owners, and it is difficult to imagine any satisfactory reason why the claimants did not present their bills for services when the vendors received their money, according to the usual practice of the profession.

Claims against decedents' estates are always scrutinized with care by this court, especially when they are not founded on an express contract but on a *quantum meruit*. The burden of proof rests heavily on the claimant, the pre-

sumptions are against him, and that arising from the family relationship is not without weight: Harrington v. Hickman, 148 Pa. 401; Mueller's Estate, 159 Pa. 590; Gilbraith's Estate, 270 Pa. 288.

We observe, finally, that the Auditing Judge, after a discussion of the testimony, held that, even if the claimants were legally entitled to compensation for their services, the amount claimed, namely, $4200, was excessive, and that the fair value thereof was $1167. In this finding we also concur.

All exceptions are dismissed and the adjudication is confirmed absolutely.