Swieczkowski v. Sypniewski, Exr., Appellant.

Argued September 28, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*William L. Jacob,* with him *C. W. Sypniewski,* for appellant.—The express oral agreement alleged by plaintiff, was not established by law: Kull v. Mastbaum & Fleisher, 269 Pa. 202; Buehler v. Plate Co., 269 Pa. 428.

Testimony of plaintiff was incompetent: Kauss v. Rohner, 172 Pa. 481.

The balance of the testimony were "loose declarations": Graham v. Graham, 34 Pa. 475; Pollock v. Ray, 85 Pa. 428; Wall's App., 111 Pa. 460; Wise v. Martin, 232 Pa. 159; Reynolds v. Williams, 282 Pa. 148.

The presumption of payment would apply: Carpenter v. Hays, 153 Pa. 432; Gilbraith's Est., 270 Pa. 288; Witten v. Stout, 284 Pa. 410.

*W. Clyde Crubbs,* for appellee.—Plaintiff was a competent witness to show what occurred between him and other persons who were not parties to this suit: Hill v. Truby, 117 Pa. 320.

No presumption of payment arose: Gibb's Est., 266 Pa. 485; McCahan's Est., 221 Pa. 188.

The evidence of the contract was sufficient to require the court to submit this case to a jury: Thompson v. Stevens, 71 Pa. 161.

OPINION BY MR. JUSTICE SCHAFFER, November 26, 1928:

The judgment from which defendant executor appeals was entered against him in an action brought to recover for domestic services rendered by plaintiff to his decedent. There is no question that the services were rendered; the controlling matter for determination is whether the contract which plaintiff sets up was established, and, as subsidiary thereto, whether appellee has successfully carried the burden of showing that she was not paid.

Leon Sadowski, the decedent, was plaintiff's uncle. He was divorced from his wife and had several children. Plaintiff joined his household about 1909, before the divorce. In her statement of claim she says her uncle then verbally agreed to furnish her with a home, board, lodging and wearing apparel in consideration of the services she would render. She alleges that in 1916 he made

the contract with her upon which she sues. In her pleading she sets forth that when the divorce was granted in June, 1916, the decedent, who was a doctor, entered into an oral agreement with her, promising that if she would continue to live with him and his children, care for them and manage his household, he would pay her what her services were worth and furnish her wearing apparel. She averred that she continued in his employ, rendering the services contemplated from the date named until November 30, 1924, a period of over eight years, when her uncle compelled her to leave his home, without paying her anything. She measures her services as being worth $25 a week, and alleges that she made frequent demands for payment as time progressed, without avail. Her claim was for $10,950 and the verdict $5,250.

The suit was brought in the lifetime of the uncle. He filed an affidavit of defense, in which he admitted he had employed his niece about February 1, 1916, to take care of and supervise his house, for which he agreed to pay her $25 per month and to furnish her with a room and board. This arrangement continued, so he sets forth, until August 1, 1916, when the compensation was mutually changed to $30 per month; it was thereafter raised to $40 per month on February 1, 1917, to $50 per month in April, 1918, and to $60 per month on May 1, 1920, which rate continued until plaintiff's services terminated on November 30, 1924. It was stated in the affidavit of defense that the affiant had paid to plaintiff every month the amounts agreed upon, and that he was not indebted to her in any sum whatsoever.

After the filing of the affidavit of defense and before trial, the defendant died and his executor was substituted. Partly by her own testimony, which will be referred to hereafter, and partly by that of her mother and others, plaintiff endeavored to make out her case, in its four essential particulars, that a contract such as she alleged had been entered into, that she had rendered the

services, their value, and that she had not been paid. To prove the contract, she offered in evidence the allegations in her statement of claim, reciting the agreement with her uncle, and the services rendered, and an excerpt from a paragraph of the affidavit of defense, admitting that verbal agreements had been made between them, without offering that part of the affidavit which qualified the allegations in the statement of claim and showed what from the uncle's standpoint the agreements were. Under the circumstances, the admission of plaintiff's allegations in the statement as to what the verbal contract was, without the offer of the entire admission of the affidavit of defense, was improper and placed the case of the defendant executor at a serious disadvantage. His decedent had admitted there was an agreement, but had denied that it was as plaintiff set it forth and had particularly denied that he had agreed to pay plaintiff the indefinite sum of what her services were worth as she alleged, but set forth specific amounts which he had agreed to pay her. "If the affidavit of defense only qualifiedly concedes a particular fact, and plaintiff offers it in evidence as though the fact were unqualifiedly admitted, [and defendant objects as he did here]......the court should not admit the evidence without the qualification": Buehler v. United States Fashion Plate Co., 269 Pa. 428. Overdorff v. Boyer, 275 Pa. 294, cited by appellee, is not in point. In that case, a suit for labor and materials furnished, the defendant did not deny the items, but set up a contract basis of payment. The statement in the pleadings relating to the items were properly admitted as evidence, as they were not in dispute. Here the contract alleged by the plaintiff was specifically denied, and a distinct agreement set up.

The Evidence Act of May 23, 1887, P. L. 158, section 5, clause e, provides "Nor where any party to a thing or contract in action is dead......and his right thereto or therein has passed either by his own act or by the act of the law, to a party on the record, who represents

his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract ......be a competent witness *to any matters* occurring before the death of said party." This section of the act applies not only to transactions with a deceased party to the thing or contract in action, but to testimony as to any fact occuring before his death: Sutherland v. Ross, 140 Pa. 379. That an interested party is generally incompetent for all purposes is accepted without discussion in Crothers v. Crothers, 149 Pa. 201; Baldwin v. Stier, 191 Pa. 432; Reap v. Dougher, 261 Pa. 23; Sheaffer v. Brown, 281 Pa. 114. Notwithstanding this provision of the statute, plaintiff was permitted to testify over appellant's objection as to the servants her uncle employed during the time she worked for him, and what they did and did not do, to the lack of servants, to services she rendered to the children, to services performed for her uncle in connection with his medical practice, to the purchases she made for the household and for the children, to the money she received from the decedent to pay for them, to account books she kept and that she showed to her uncle, that she gave the account books to him, to the cooking she did, the laundry work, sewing and scrubbing, to her care of the children and of her uncle when sick, to her management of some of his business, the length of her hours of employment and the expenditures she made from the moneys he gave her, the latter to negative the idea that she received any of it for herself. All of these things were "matters occurring before the death" of her uncle. About them she was forbidden to testify by the express terms of the act; to permit her to so testify was manifest error: Phillips's Est., 271 Pa. 129; Campbell's Est., 274 Pa. 546, 551, and cases cited. Plaintiff was not only a surviving and remaining party to the contract in action, but she had an interest adverse to the right of the decedent: Edmundson's Est., 259 Pa. 429, 436.

With her evidence out of the case, what have we left? Martha Swieckowski, mother of plaintiff, testified that Dr. Sadowski said to her that he wanted to keep plaintiff for a housekeeper and to care for his children; that he was going to give her good pay, and if she should marry he would give her pay and a trousseau and look after everything; that if he should die he would pay her in his will, give her good pay for her work; that everything was fixed up, that after plaintiff left his house he told her, the witness, that he was going to pay her after his death. Julia Krczminski, a servant employed in the household, said that on one occasion when Dr. Sadowski was talking to her he said that if Helen, meaning the plaintiff, should get married or if he should die "she will get some money out of me," and on another occasion he remarked, "I wanted to give a couple thousand dollars and fix everything in the house that is needed, if she gets married." This witness, in answer to a question as to what Dr. Sadowski said about paying plaintiff, replied, "The doctor says that she don't need that now, either she is going to get married or if he will die, he will give her some money," and further said that she had everything, that she lived with him and was not in need of anything. Another witness, Jennie Kolb, testified the decedent said that plaintiff had come to take care of his children and he would see that on his dying she would "get in his will, that he will fix her up good." Anna Grabowski, another of plaintiff's witnesses, said that in her presence the doctor stated to plaintiff that he would never forget her for the work she was doing, that he would remember her in his will. This is the sum of all the testimony as to the alleged contract. It is woefully lacking in making it out and in meeting the requirements of our decisions in this class of cases. At most it indicates that the deceased in consideration for the services plaintiff might render to him undertook to provide for her in the event of her marriage or in his will; there is no such undertaking shown as plaintiff pleaded "that if she would con-

tinue to live with him and his children and manage his household for him and care for his children, he would pay her what her services were worth." The testimony would indicate that plaintiff was rendering the services to her uncle in expectation of a legacy. No recovery can be had against a decedent's estate for services so rendered: Gilbraith's Est., 270 Pa. 288.

That there can be no basis for implying a contract such as plaintiff sets up under the testimony which she produced is plain from such cases as Wall's App., 111 Pa. 460; Carpenter v. Hays, 153 Pa. 432; Wise v. Martin, 232 Pa. 159; Gilbraith's Est., 270 Pa. 288; Hirst's Est., 274 Pa. 286; Reynolds v. Williams, 282 Pa. 148; Schleich's Est., 286 Pa. 578. Plaintiff, being a niece of the decedent and having been taken into his family and maintained by him as a member of it, it was incumbent upon her to establish an express contract (Wall's App., 111 Pa. 460; Bean's Est., 264 Pa. 131; Witten v. Stout, 284 Pa. 410) ; which should be clearly proved by direct and positive testimony and in terms definite and certain: Graham v. Graham, 34 Pa. 475; Wall's App., 111 Pa. 460; Carpenter v. Hays, 153 Pa. 432; Wise v. Martin, 232 Pa. 159; Gilbraith's Est., 270 Pa. 288; Hirst's Est., 274 Pa. 286; Reynolds v. Williams, 282 Pa. 148. Mere loose declarations, suggested gratuities, anticipated benefactions and testamentary intentions are insufficient to warrant a recovery: Wall's App., 111 Pa. 460; Wise v. Martin, 232 Pa. 159; Reynolds v. Williams, 282 Pa. 148.

When we come to the matter of payment, the situation is still more vague. As a matter of fact, no testimony was offered to show that payment had not been made. The case in this aspect differs from those of similar kind ordinarily before us. Here the suit was brought against the decedent in his lifetime. The contract as pleaded by plaintiff was specifically denied by him in his affidavit of defense. He, however, admitted a contract for a monthly remuneration beginning at $25 per month and

rising to $60 per month. Plaintiff claims for an indefinite amount, what her services were worth. In the light of defendant's affidavit of defense, in which he averred, that he had paid in full, with his mouth now closed in death, we could not permit a recovery without proof that was fully satisfying on the proposition that payment had not in fact been made. That wages for domestic services are presumed to be paid at the periods customary for payment has been established in many cases: Carpenter v. Hays, 153 Pa. 432; Gilbraith's Est., 270 Pa. 288; Witten v. Stout, 284 Pa. 410, and cases therein cited. While it may be that because of the relationship existing between the parties, there was strictly no presumption of payment as in the usual case of a servant (Gibb's Est., 266 Pa. 485, 489; Ranninger's App., 118 Pa. 20) still it is our judgment that the burden in this instance, in view of the affidavit of defense, was upon plaintiff. Being of opinion that appellee has failed to establish such a contract as the law would enforce and has not met the burden put upon her regarding payment, no recovery should have been permitted in the court below. Defendant's point for binding instruction should have been affirmed.

The judgment is reversed and here entered for defendant.