## Glatfelter's Estate.

*James G. Glessner,* for exceptant; *William B. Gemmill,* contra.

SHERWOOD, J., December 8, 1930.—This matter comes before the court on exceptions filed by Hallick Weire to the report of the auditor refusing his claim for boarding decedent, Elias Glatfelter, for a period of six years between March 29, 1923, and March 29, 1929, at the rate of $6 per week.

The facts are as follows: Elias Glatfelter, the decedent, a widower eighty-eight years of age, had been living with Hallick Weire for about twenty years. Decedent raised Weire's wife, and after the death of Glatfelter's wife, about twenty years prior to his own death, which occurred March 30, 1929, he went to live with Weire. Weire was no relation whatever of Elias Glatfelter. His wife was a foster daughter and there was no evidence offered showing that she had been legally adopted by Glatfelter. Glatfelter boarded with Weire during the period of time for which claim is made, and the character of boarding furnished him was worth from five to seven dollars per week in that neighborhood. The decedent died at the home of Weire. Weire's wife died a couple of years prior to Glatfelter. In March, 1928, the decedent left the home of Hallick Weire, but returned about a week later. Decedent performed labor and services on the farm during the time that he was boarding with the claimant, diminishing in kind and character as he became older. He left a gross estate of $6505.60. The contention of the learned counsel for the claimant is that the auditor erred in refusing to allow this claim for the reason that there was an implied promise to pay for boarding and lodging, and that the testimony of the witnesses, Phœbe Mundis and Stuart Weire, children of the claimant, was sufficient to rebut the presumption of periodical payments.

The testimony of Phœbe Mundis on this question was as follows:

Direct examination: "Q. Did he board there the last six years of his life? A. Yes. Q. Do you know whether he paid your father for any boarding? A. No, he didn't."

Cross-examination: "Q. Do you mean to say that Mr. Glatfelter didn't pay your father anything during the last six years previous to his death? A. Not that I know of. Q. He could have paid and you wouldn't have known it? A. Perhaps. Q. He could have paid his board every week and you would not have known it, isn't that so? A. Yes, I guess he could have. Q. You left nine years ago? A. Yes. Q. There could have been a good many things transacted at your father's house that you wouldn't have known about? A. Yes. Q. Will you state whether or not, if you know, Elias Glatfelter paid any boarding to your father from March 29, 1923, to March 29, 1929, that yau know of? A. Not that I know of. Q. But he could have paid him and you wouldn't have known it? A. It might be so, but I am most sure that he didn't. Q. But you don't know whether he did or not? A. No, I never seen him."

The testimony of Stuart Weire is as follows:

Direct examination: "Q. During that time, state whether Elias Glatfelter paid any boarding to your father or anyone that you know of? A. Not that I know of. Q. Did you ever see him pay anyone any board? A. No sir, I did

not. You see I am a member of the family and usually hear things that go on. Q. Then you never heard him speak about his paying board? A. No, sir."

Cross-examination: "Q. You say you don't know whether he paid your father or not? A. No, sir. Q. You don't know anything about the dealing between your father and Mr. Glatfelter? A. I have not always been there. I expect I know as much as anyone as I am a member of the family; what goes on in the family we mostly all know. Q. He gave him money? A. Yes. Q. Cash? A. Yes. Q. How much? A. Five hundred dollars. Q. Mr. Glatfelter could have paid your father regularly every week and you wouldn't have known it? A. He could have, but I don't believe it. Q. It is a matter of belief with you, then? A. No, sir. Q. You just now said you don't believe it. Isn't it a matter of belief? A. Yes, if you want to look at it that way. Q. You have considerable doubt in your mind about what was paid for his boarding? You don't know, isn't that true? A. I don't know. I can't say he didn't pay him, because I didn't see. I would take an oath that he didn't by chance. Q. It is just a matter of belief with you? A. Yes, if you want to call it that. I believe in the opposite direction that you do, though."

Assuming an implied promise to pay for boarding, does this testimony measure up to the standard required to rebut the presumption of periodical payments? It will be noticed that the answers to the leading questions asked on examination in chief were simply conclusions. No facts were stated by the witnesses upon which to predicate such conclusions. In addition, cross-examination of the witness Mundis shows that she left the home of her father, the claimant, about nine years prior to the death of the decedent. True, she returned on weekly visits, sometimes as much as three times a week, but in the nature of things her testimony could not be positive and direct as to the payment or nonpayment of board bills during her absence from home. The cross-examination of the witness Stuart Weire shows that he was simply testifying to the fact that so far as he knew he had no direct knowledge as to whether the board bills had been paid or not. We agree with the auditor that the law presumes payments for boarding and lodging were periodically made and that the burden is on the claimant to disprove such payments, and that the proof offered for meeting the burden of proving nonpayment is so vague and uncertain as to be insufficient to overcome the presumption of payment.

In Gilbraith's Estate, 270 Pa. 288, the Supreme Court, through Mr. Justice Simpson, says it is the habit and usage of people to pay their board bills at stated periods. This is so well understood in this country that in the case of servants' wages a presumption arises that they are periodically paid; and this conclusion is not overruled by Gibb's Estate, 266 Pa. 485, but, on the contrary, is expressly recognized, for there the rule was held not to apply solely because the relations between the aunt and nephew were of such peculiar and exceptional character that the presumption of payment arising in the ordinary case of services rendered was not applicable.

The learned counsel for the appellant insists that Gibb's Estate, 266 Pa. 485, and Estate of Martin W. Griffin, 96 Pa. Superior Ct. 185, rule this case in claimant's favor. With this contention we do not agree. In the Gibb case the decedent had stated to witnesses that he was paying his board, although admitting at the same time that none in fact had been paid. In the Griffin case the decedent had also made declaration to others, in the absence of the claimant, that he would compensate him. It seems to us that these two cases are distinguishable from the case at bar in that the admissions of the decedent himself rebutted the legal presumption of periodical payments. We, there-

fore, conclude that the auditor did not err in refusing to allow the claim of Hallick Weire against the estate of Elias Glatfelter for boarding and lodging.

And now, to wit, December 8, 1930, the exceptions filed by Hallick Weire are dismissed and the report of the auditor is confirmed, and an exception is granted Hallick Weire to the action of the court in this regard.

From George Hay Kain, York, Pa.