Estate of J. A. Myers.

Argued April 17, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and DREW, JJ.

*G. Malcolm McDonald,* and with him *G. M. McDonald,* for appellants.

*Edward Friedman,* and with him *Charles J. Margiotti, W. M. Gillespie, S. C. Pugliese* and *Bert A. Hoffman,* for appellee.

OPINION BY TREXLER, P. J., July 8, 1931:

J. A. Myers resided at Reynoldsville, Pennsylvania. His wife died December 12, 1925, and his immediate relatives came to the funeral. Among them, the claimant, Nancy E. Smith, who then lived in Erie, Pennsylvania. Her household consisted of her two daughters, to wit: a Mrs. Cunningham with her two children, aged four and six, and a Mrs. Neigh, with her daughter,

aged six years. From the time of the funeral until the death of her father on December 20, 1928, Nancy E. Smith made her home with him. The three grandchildren also made their home and lived with him for a time and later, her two daughters, above named, formed part of the party for a considerable portion of time until his death. The decedent owned the home and its furnishings and provided the family with its necessaries. The claimant did the housework and gave the decedent such personal attention as his physical condition required and prepared his meals. Besides, she sold garments, sewed, washed and ironed and did other work for which she received payment from people not connected with the family. At the death of Mr. Myers, she gave the executor notice that she was a member of the decedent's family and elected to retain personal property designated by her to the value of $500 and this was appraised and set apart and received by her.

At the audit of the account, she presented a bill for $3,140, for services as housekeeper and nurse for the decedent for 157 weeks at $20 per week, and $267.26 for money she had paid out on merchandise accounts owed by her father. The auditor disallowed both claims. On appeal to the lower court, the court apparently on its own motion, after considering the exceptions filed by the claimant, reversed the order of the auditor because, as the court said, of a *vital* error committed in ruling that Nancy Smith was incompetent to testify as to matters occurring in the lifetime of decedent, and referred the matter to the auditor to afford the claimant further opportunity to present testimony.

The Act of June 11, 1891, P. L. 287, Section 1, does not make the surviving party competent, except as to such occurrences involved in the matters in controversy as are testified to by witnesses on behalf of the

estate in which event the surviving party may testify
as to such events if he was present: Aaron v. Smith,
90 Pa. Superior Ct. 565; Swieczkowski v. Sypniewski,
294 Pa. 323. The auditor for the second time rejected
the claim. The lower court again reversed the auditor
for disallowing the claim, but apparently having be-
come doubtful as to the propriety of the allowance of
Nancy E. Smith's testimony, stated that "we will rest
our findings upon the testimony of Mrs. Schuckers
taken at the hearing on July 30, 1930, and that of
Mrs. Whitmore taken August 13, 1930."

Our task is narrowed by this remark of the court
and we will briefly refer to what these two witnesses
testified. Mrs. Schuckers testified in substance that
the decedent often discussed his private affairs with
her; that several times he spoke of Mrs. Smith work-
ing too hard and that she was to put in a bill and "a
good big one." She never heard Mr. Myers say any-
thing in regard to paying Nancy Smith for her services
only when "he would mention that he offered her
money and she would not accept it." He often spoke
that he did not see how he would get along without
her. The witness testified that the claimant performed
services of a nurse and housekeeper and everything
that was required to run the family. She was asked
what fair compensation would be for the services per-
formed and upon objection being made as to her com-
petency, she sought to qualify as an expert by stating
that she had taken care of her father-in-law, did the
work of a nurse when he was in bed and had received
compensation for it and that the work she did and
work of the same nature was worth $30 per week. It
is very apparent that this witness was not competent
to testify as to the value of the services.

The substance of Mrs. Whitmore's testimony was
that she met Mr. Myers quite frequently when she
went down town, that he had told her that "he had

sent for Nanny, she was the only one he could depend upon and that she was the only one he liked, for she was like her mother," said "he was going to have Nanny take care of him and his household." In the conversation he said, "he agreed to pay Mrs. Smith for her work, he said that he agreed to." There was nothing more said. This was before Mrs. Smith came to stay with Mr. Myers. Shortly after she came, he again said that "Nancy was worth quite a bit to him, she was the only one he could depend upon." He said, "he agreed to pay Nanny for the services rendered to him." It is very significant that the witness states that these services were rendered *"when he was not well."* A third conversation was had, but nothing was mentioned there, except that he said he knew he was a great deal of bother. A subsequent conversation was had, but it is not clear as to what happened then. The witness states he made admission, "he said that he was glad she was there and impressed on my mind that she was not there for nothing." In answer to the further question, "Did he tell you that?" the witness said, "Yes, he did, I want to impress on your mind Nancy is not staying there for nothing." Subsequently the witness claims to have overheard a conversation between Mrs. Smith and Mr. Myers, concerning a gas bill in which Mr. Myers in commenting upon a statement of Mrs. Smith that she had washed and ironed every day that month, he said, "yes, it is right, you done what others would have sent out;" and the witness continues, "he put his hand in his pocket and offered it to her and she said, "father, I would rather you paid me all at once," (when he got well) and he said, "all right, put in your bill." This was the only conversation to which the witness testified that occurred when both Mr. Myers and Mrs. Smith were present. The witness could not remember at what

time these conversations took place. She disclaimed any recollection as to dates.

This is the entire testimony which the court stated it considered in allowing the claim of Mrs. Smith. We may add that it was practically the only testimony on behalf of the claimant which the court could properly consider. We are constrained to say even if the claimant had established a contract to pay for the value of the services, their value was not fixed by any adequate standard. There is no competent proof as to what the services which Mrs. Smith performed were worth.

Neither do we think that there was sufficient proof to show that the decedent agreed to pay for the services rendered. The claimant and her dependents lived with her father as members of his family. The services sought to be recovered were presumably rendered gratis. On the face of things, it appears that the decedent was running the family and that the three grandchildren for some time came there and lived with him, attended school from his place; the mother of the grandchildren came and lived there for some time and the mother of the other grandchild also spent some time there. There was evidence that he paid the household bills. In further confirmation of the fact that this was purely a domestic arrangement not founded upon contract, this claimant claimed her exemption as a member of his family. It would seem that the two positions are inconsistent. It would certainly lead us to the conclusion that her burden is greater in sustaining the claim under such circumstances, for if she was a mere servant, she was not entitled to any exemption. Claimant told a witness, and this was not contradicted, that she did not intend to come home while her stepmother was living, but when she was gone, she was going to stay with her father, because she loved him.

Claims of this kind are always subject to close inspection and payments are presumed to have been periodically paid, or that the services were rendered gratis. If we conclude that the decedent actually made statements that this woman should present a bill, it certainly would not in itself be enough to place a definite liability upon him, nor would it, standing alone, bind him to any legal obligation to pay. There is no specific contract shown. To establish such contract, the proof must be explicit, consistent and unequivocal and very properly so. Testimony as to a loose declaration of the decedent, expressions of gratitude or of appreciation should always be carefully scrutinized. If this were not so, estates of decedents would often be depleted by unscrupulous persons. The statement that is attributed to the decedent that she should put in a bill "and a good big one" does not establish a contract definite in its terms: Murphy v. Corrigan, 161 Pa. 59; Patton v. Conn., 114 Pa. 183; Swieczkowski v. Sypniewski, 294 Pa. 323; Gilbraith's Est., 270 Pa. 288. It may at best be considered as an expression of some liability, moral or legal, but lacks definiteness in that regard, and that is all that in the most favorable view of claimant's case can be claimed. For all we know, she may have followed his advice and put in a bill and received compensation. Decedent's bank book and check stubs are not available through no fault of the appellant. We think the auditor was right in the conclusion he reached both at the first audit and at the second.

We repeat, the claimant having been a child of decedent and a member of the family, it was her duty to establish an express contract clearly proven by direct and positive testimony and in terms definite and certain: Swieczkowski v. Sypniewski, supra, and cases there cited. Mere loose declarations are not

sufficient. The claim of Mrs. Smith should have been disallowed.

The decree of the lower court is reversed and it is directed that the schedule of distribution be modified in accordance with this opinion.