## Moore's Estate.

*John J. Haberstroh*, for claimant; *Hare & Hare*, for Commonwealth.

PATTERSON, P. J., October 17, 1930.—Five exceptions were filed to the auditor's report. Only two were argued and discussed in briefs filed by the respective counsel. The one charged error in allowing the claim of the Commonwealth of Pennsylvania for inheritance tax on real estate conveyed by deceased more than a year previous to her death, the full possession and enjoyment of the same remaining in deceased until her death. The other charged error in refusing to allow a claim of Mrs. Emma Snyder for personal services rendered deceased.

, Mary R. Moore, a widow residing in the City of Altoona, Pennsylvania, died January 6, 1929, testate, possessed of an estate of upwards of $300,000, consisting of real property and securities. She died without issue to survive her. On October 18, 1927, she conveyed by general warranty deed certain real estate situate in the City of Altoona, appraised at $100,000, to her niece, Mary A. Winter, of the City of Johnstown, Pennsylvania. The deed was delivered personally by the grantor to the grantee with the secret understanding between them that no one should know of the transaction. The grantee, Mary A. Winter, deposited it in her safe deposit vault in an Altoona bank, where it remained until about ten days after the death of the grantor, when the same was recorded in the Office for the Recording of Deeds in and for Blair County.

Mary R. Moore, grantor, continued in possession and enjoyment of the property until her death. The property was assessed in her name and she paid the taxes; procured insurance and paid the premiums thereon; demised the several parts of the property to various tenants and received the rents therefrom; made repairs and exercised sole and exclusive ownership, management and control of the same until the day of her death. Mary A. Winter, grantee, did not exercise her right of enjoyment and possession or receive any of the income from said property, made no demand therefor during the lifetime of Mary R. Moore—in fact, knew nothing whatever about the income and management of the property during the lifetime of the decedent.

Neither party made known to any other person the fact that a conveyance had been secretly executed, delivered and placed in the safe deposit vault of the grantee. The Commonwealth claims that the entire transaction indicates that the transfer was a gift intended to take effect in possession or enjoyment at or after the death of Mary R. Moore, in violation of the provision of the Transfer Inheritance Tax Act of June 29, 1919, P. L. 521, section 1 (c), which provides as follows:

"When the transfer is of property made by a resident . . . by deed, grant, bargain, sale, or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death," the same is taxable under the inheritance tax law.

There is no contention that this transfer was made in contemplation of the death of the grantor, but it is argued that the conveyance was executed with the intention of the parties that the same would take effect in possession or enjoyment at or after the death of the grantor.

Mary A. Winter, grantee in said deed, testified before the auditor as follows:

"Mrs. Moore was my aunt. I attended her for many, many years, was closely and intimately associated with her for twenty-five or thirty years. The deed was executed, acknowledged and delivered to me on October 18, 1927. It was prepared at the office of D. Lloyd Claycomb. Mr. Claycomb, my aunt and the two witnesses were present. I had possession of the deed from that time until the date of its recording. I put it in my safe deposit box at the First National Bank in my name. There was no agreement, contract or understanding between myself and Mrs. Moore other than in the deed. There was no exception or reservation on the part of Mrs. Moore to recall the deed and no collateral agreement. I considered the One Dollar consideration a matter of form. It was a gift by my aunt to myself. The property consisted of store rooms and apartments leased by several tenants. I did not have the insurance policies transferred to my name, nor did I disturb the possession of the premises.

"Q. Why was there no disturbance in the occupancy of the premises or collection of the rentals? A. For this reason, that it was the finer feelings within her that others would not be wounded. Q. Did you make any statement relative to the conveyance of the property to any other person? A. She wanted me not to say anything, not to mention the fact to any other person that I had been the recipient of the gift. Q. Why didn't you record the deed until after the death of the decedent? A. I did not think it was necessary. Q. Your aunt cautioned you not to make mention of the fact to the other heirs? A. Yes. I did not receive any of the rents of the property nor did I pay any of the repair bills or insurance; nor did I lease any portion of the property. The property was not assessed in my name afterwards nor did I pay the taxes. Q. Did you at any time after the execution of this deed until the death of Mrs. Moore exercise any control or ownership over this property? A. No."

This testimony is convincing evidence that the transfer was intended to take effect in possession and enjoyment after the death of the grantor. And while there was no reservation in the conveyance or other writing which continued the possession and enjoyment in the grantor during her lifetime, it was in fact continued and uninterrupted to the day of her death. The grantee was a niece of testatrix, and she testifies that testatrix did not wish to wound the feelings of other relatives during her lifetime. She wanted whatever disappointment was to result from this transfer to take place after her death. She cautioned grantee not to mention the conveyance to the other heirs. All of the circumstances and testimony warrant us in concluding that the auditor did not err in allowing the inheritance tax claim of the Commonwealth. It is evident that this conveyance was executed by the grantor and accepted by the grantee for the sole purpose of evading the inheritance tax law. For all other purposes it might just as well have been included in the will of testatrix. The wounded feelings of the other heirs, mentioned by the witness, would not have been made any worse by will which would not take effect until death than by secret deed, which by the conduct and agreement of the parties was not to take effect and did not take effect until after the death of the grantor. This transaction is the very thing which the Act of 1919, as amended by the Act of 1921, provided should be subject to the transfer inheritance tax.

In the case of Dolan's Estate, 279 Pa. 582, Mr. Justice Kephart says:

"To escape the latter provision, a conveyance must be such as parts with possession, title and enjoyment in the grantor's lifetime. . . . When a transfer is made or intended to take effect either in possession or enjoyment after death, and the settlor or grantor retains a grasp of the entire estate, as long as he lives, it cannot be said possession and enjoyment in the beneficiary takes effect prior to death; under such circumstances the Commonwealth is entitled to a tax on the transfer."

In Spangler's Estate, 281 Pa. 118, opinion by Mr. Justice Simpson (quoting from Du Bois' Appeal, 121 Pa. 368), it is held:

"The naked legal title acquired by the grantee was the merest shadow. The grantor held a firm grasp on the entire substance, and he retained it as long as he lived. In view of all this, it is idle to contend that, in any proper or statutory sense of the word 'enjoyment,' the conveyance in question took effect or was intended to take effect in enjoyment prior to the death of John Du Bois."

Counsel for the exceptant argues that the foregoing cases, as well as others cited in support of the Commonwealth's claim and relied upon by the auditor,

are not applicable to the present case for the reason that in all the cases cited there was a stipulation in writing contained in the deed of conveyance or in a bond or other instrument accompanying the conveyance providing that the grantor should continue in possession and receive the income and profits of the estate during his or her lifetime. And it is pointed out that in the present case there is no writing to this effect, nor is there any oral agreement. However, the agreement that the transfer was to be kept secret and the conduct of the parties are convincing proof of the intention of the parties at the time of the execution of the deed and thereafter. No stipulation in writing or oral agreement could have more completely established the intention of the parties. The secret understanding in this case had the same effect as if there had been a reservation in the deed or a bond accompanying the deed, securing to the grantor the right of enjoyment and possession and the profits and income of the estate during her lifetime.

In Reish, Admin'r, v. Com., 106 Pa. 521, where there was an absolute conveyance as in this case, with a bond to secure the possession and income for the life of the grantor, the Supreme Court said:

"John Reish, was entitled to receive the same income and profits from the property, during his life, as if the transfer had not been made. One certainly cannot be considered, as in the actual enjoyment of an estate, who has no right to the profits or incomes arising or accruing therefrom."

Mary A. Winter, from the day of the conveyance to the time of the grantor's death, knew that she was not entitled to receive the income from said property. Neither was she to enjoy or possess the estate, and she made no demands upon the donor, her aunt, for the rights or the estate which had been transferred to her.

Mrs. Emma J. Snyder, another niece of the testatrix, presented to the auditor her claim for nursing and other personal service rendered the decedent covering a period from September 14, 1927, to the time of her death, January 6, 1929. This claim was refused by the auditor, and from an examination of the testimony we are of opinion that no error was committed. There is evidence that service was rendered but no evidence that the same was not fully paid. The testimony shows that the deceased paid her bills promptly, and that while she said to a number of persons that she would pay Mrs. Snyder and pay her well, there is no reason to believe that she did not pay her from time to time, and every reason to believe that she did not permit this claim to be unpaid for a period of almost a year and one-half prior to her death. There is no evidence that any demand for payment of the same was ever made within this period. By her will testatrix bequeathed to claimant the sum of $7000 and a diamond brooch.

In Swieczkowski v. Sypniewski, Executor, 294 Pa. 323, it is held that, where a claim is made against a decedent's estate for domestic services during many years, the law will presume payment at regular intervals for such services in absence of clear evidence to the contrary.

And in Schleich's Estate, 286 Pa. 578: "To establish such claim by parol evidence requires proof direct and positive. The terms of the liability must be certain and definite."

In Gilbraith's Estate, 270 Pa. 288, it is held that, where a woman of considerable estate, who was in the habit of paying her bills regularly, boarded for several years with a former domestic servant and was nursed by the latter, a claim presented by the latter against the estate of the former for boarding and nursing for three years prior to the death of decedent will not be allowed where there is no evidence to warrant a finding that the claimant

did not receive compensation. In such a case there must be sufficient evidence to overcome the presumption that claimant was paid at stated periods.

### Conclusion.

The exceptions charging the auditor with error in refusing to allow the full amount of the claims of Eva Kane and Bessie H. Baker, and demanding that certain bequests of Mary A. Winter and Emma J. Snyder be paid, are without merit. All of the exceptions are, therefore, hereby dismissed, and the report of the auditor is directed to be confirmed absolutely. Exception noted for the exceptants. From Robert W. Smith, Hollidaysburg, Pa.