## The Cambria Iron Company *versus* Tomb *et al.*

*Joint or several entry and settlement on abandoned improvement, by brother and two sisters, a question of fact for the jury.—Basis of legal presumption.—Estoppel in pais discussed.— Verdict in ejectment, when amendable by the court.—Incompetence of party as a witness.*

1. Where a single man, with two adult unmarried sisters, entered upon an abandoned improvement, cleared and lived upon it for many years, the sisters claiming ownership with the brother, assisting in all the labour of clearing and cultivation, and paying for labour done upon the farm by other persons, by weaving and otherwise ; the question whether the entry and settlement was that of all, or that of the brother only, was for the jury as a matter of fact.

2. The relationship between the parties was not such as to raise the presumption, that their entry and settlement was that of the brother only : and the refusal of the instruction that " he stood in the attitude of one who was the head of a family, and that the presumption was one of law," was not error.

3. But where the brother had sold the land in dispute to one under whom the plaintiff claimed, the facts of relationship and family association were proper for submission to the jury, under proper instructions, for them to infer, under all the evidence, whether the sisters had knowledge of the sale.

4. Where there was no evidence that the sisters knew of their brothers' sale, there was no such presumption of knowledge arising from the existing relationship, as would raise an equitable estoppel against their assertion of title : hence, it was not error to instruct the jury that there was no evidence sufficient to affect their conscience, and make it their duty to interfere : nor to negative a point of the plaintiffs, predicating an estoppel against the sisters from their knowledge (to be inferred by the jury from relationship) of an application by the brother to the land office for the legal title to the land in his own name, or that he had in his own name filed a *caveat* against the claim and application of another, where no sufficient evidence of such facts had been given.

5. Where, after the sale by the brother, and the removal of all the parties

[Cambria Iron Co. *v.* Tomb *et al.*]

to another tract, his vendee induced them to go back again, giving a lease to the brother : *held,* That the mere acquiescence of the sisters in the contract between their brother and his vendee, in the absence of representations misleading him or any fraudulent concealment, would not estop them from asserting their title as tenants in common.

6. The verdict of the jury in favour of the defendants for the undivided two-thirds of the tract of land in dispute, omitting to state that for the other undivided third for which the brother had previously confessed judgment they found for the plaintiffs, was amendable; hence, it was not error to overrule a motion in arrest of judgment based upon the defect in the verdict.

7. The brother, being a defendant and party to the record, was not a competent witness for his co-defendants.

ERROR to the Common Pleas of *Indiana county*

This was an action of ejectment by the Cambria Iron Company against William Tomb, Margaret C. Tomb, and Mary Tomb, for four hundred and forty-one acres and one hundred and forty perches of land and allowance, in Pine township, " being the same tract of land which William Tomb, one of the defendants, conveyed to David Stewart, from whom the plaintiff derived title. William Tomb appeared and confessed judgment as to himself alone, without prejudice to the others.

The parties, who were unmarried, settled on this land some time in 1840 and lived thereon for several years, supporting themselves and an insane sister, claiming to hold it jointly, working together to clear the land, the sisters owning a large part of the stock on the place. William was a cripple and not always able to work, but the land was assessed and taxed in his name, as though he was the sole owner thereof.

On the 26th day of December 1844, William, by articles of agreement, sold the whole tract to David Stewart. An action of covenant was afterwards instituted by William against Stewart, on the agreement, to compel the payment of the purchase-money. During the pendency of the action, on the 27th January 1851, he filed in the Court of Common Pleas of said county a deed of conveyance to Stewart for the land in dispute. This deed was dated 15th July 1847, and described the land as being " all that tract or piece of land cleared by the said William Tomb, in said township, by virtue of an actual settlement and improvement upon the same, and sold to the said David Stewart by articles of agreement dated 26th December 1844." Upon payment by Stewart of the judgment recovered against him on the articles of agreement, he took his deed out of court.

Mary and Margaret Tomb, the defendants, set up as a defence to the plaintiff's recovery, that they were joint settlers and joint owners of the land with William, and that they were not affected by the sale of the premises made by William Tomb to Stewart. Their claim was, therefore, for the two undivided third parts of the whole tract; but they filed no disclaimer as to the remaining one third part.

. [Cambria Iron Co. v. Tomb et al.]

On the trial the defendants called William Tomb as a witness, who was objected to by the plaintiff, but admitted by the court. Under the rulings of the court below there was a verdict and judgment "for defendants for all the undivided two-thirds of the tract of land in dispute."

A motion was then made by the plaintiff's counsel in arrest of judgment, for the reason that the defendants having pleaded the general issue, and gone to trial for the whole land in dispute, the verdict of the jury should have been either for the plaintiffs for the undivided one third part of the land in dispute, or generally for the defendants; the confession of judgment by William Tomb, the co-defendant, not disclosing what interest in the land, if any, the plaintiff was entitled to under it. This motion was overruled, and judgment entered on the verdict.

The other errors assigned were to the following answers given by the court below to certain points presented by the plaintiff:—

1. The court are requested to instruct the jury that in the absence of sufficient competent proof to the contrary, the entry and settlement upon the lands in dispute by the defendants, under the evidence upon that subject, is, presumptively, the entry and settlement of William Tomb, the brother; and that, if they so believe, their verdict should be for the plaintiffs.

Answer.—"The right of both parties in this case rests upon the settlement made in 1840, when the brother and sisters entered for the purpose of gaining a title by settlement. The question as to how they entered and took possession, and continued to improve and occupy it, is one for the jury. It is a question of fact, and to be decided by the jury, on a consideration of all the evidence. Did William enter in his own right, and for his exclusive benefit, or was the settlement made for the joint use and benefit of all three of them? No family dependence existed between the brother and sisters. They were all of competent age, and all of about equal pecuniary ability. The mere fact that one was a brother and the others his sisters affords no presumption that one had any superior claim over the others, any more than if the whole three were brothers. There is no presumption in favour of one over the others. It is simply a question of fact, to be determined by the evidence. We therefore answer the point in the negative, with this explanation."

2. That from the facts of relationship and family existing between and surrounding the defendants, the jury may infer a knowledge, on the part of the sisters, of the sale of the land in dispute by William, their brother, to Stewart.

Answer.—"This point is answered in the negative."

3. That if they do so find, that is, that the sisters knew that William sold the whole tract, and there be no sufficient proof that they, the sisters, declared and asserted their claim or right,

[Cambria Iron Co. *v.* Tomb *et al.*]

but remained quiet and permitted William, their brother, to recover in an action at law the price of the whole tract, and execute and deliver a deed for the same to Stewart, then are they equitably estopped from asserting title in themselves now, and the verdict should be for the plaintiffs.

Answer.—"There is no evidence sufficient to affect the conscience of the girls, and make it their duty to interfere. They were in possession, and it was Stewart's duty to inquire by what authority. They were not bound to seek out purchasers and give notice; and their title, from its nature, could not be recorded. Nor is there any evidence that they knew that William was enforcing the payment. The pendency of the suit would not affect them, because they were not bound to take notice of suits between William and Stewart, in which they were not parties. This point is therefore answered in the negative."

4. That if the jury find that the sisters knew (which they may infer from the relationship and family connections between them) that William made applications to the land office for the legal title to the land in dispute, and subsequently filed a *caveat* against the claim and application of William Stevens, in his own name, and did not then declare and assert their claim or right, but by their silence acquiesced therein, to the injury of a subsequent innocent purchaser from William, then are they, the sisters, now equitably estopped from asserting title, and the verdict should be for the plaintiffs.

Answer.—"There is no sufficient evidence that William made any application to the land office for the legal title, nor any sufficient evidence that he filed a *caveat*, nor can such presumption be made from the family connections, nor that they knew it. Nor is there any legal evidence that any *caveat* was entered 'in his own name.' And even if there was evidence of the fact, and evidence that they knew it, it would not affect their right, if they were tenants in common of the land. This point is therefore answered in the negative."

7. That if the jury believe that William Tomb, one of the defendants, re-entered the land in dispute, under us, and the sisters, or either of them, knew the fact, and did not at the time assert and declare their right or claim, but by their silence acquiesced in the arrangement, to our injury, then are they now equitably estopped from asserting title thereto; and the verdict should be for the plaintiffs.

Answer.—"This point is answered in the negative, if the jury find the girls were tenants in common. In the absence of representations that misled Stewart, or any fraudulent concealment, their right would not be affected by mere silent acquiescence in the contract that William made with Stewart."

The refusal of the court to sustain the motion in arrest of judgment was also assigned for error.

[Cambria Iron Co. *v.* Tomb *et al.*]

*A. Kopelin* and *Stewart & Clark*, for plaintiffs.

*Thomas White* and *Joseph W. Thompson*, for defendants.

The opinion of the court was delivered by

AGNEW, J.—The plaintiffs in error, who were also plaintiffs below, claimed title by a conveyance from William Tomb, one of the defendants, to David Stewart. William Tomb, and his two sisters Margaret and Mary, all unmarried, took possession of an abandoned improvement in 1840, cleared it up, and lived upon the land for many years, supporting themselves, and also an insane sister, by their labour upon it. The evidence shows clearly that while making the improvement the sisters claimed the land equally with William, and assisted in the work, helping to chop, grub, pile brush, and clear the land. They also farmed it, and paid in weaving and otherwise for work done upon it. They owned a large part of the stock on the place, and bought, sold, and traded. William Tomb was a cripple and not always able to work, and the sisters were old maids.

Upon this state of the facts, the first point of the plaintiffs which called upon the court to charge, that in the absence of sufficient competent proof to the contrary, the entry and settlement of the defendants under the evidence were presumptively the entry and settlement of William, was correctly answered by referring the question, as one of fact, to the decision of the jury.

But it is now contended that William stood in the attitude of 'one who is the head of a family, and that the presumption is one of law. This is rather a novel claim, and had it not received some countenance during the argument, would scarcely need a serious refutation. Legal presumptions are founded upon experience and common observation. When a connection is found to exist between things, so that when one occurs the other is known always or generally to follow, this connection becomes the foundation of a legal presumption of the existence of the latter from the proof of the former. These presumptions are conclusive when the connection appears to be constant or universal, and *primâ facie* when the connection is general, but not so universal as to establish a conclusive certainty : 1 Greenleaf's Ev., §§ 14–33.

As between a husband and father and his wife and children, an improvement or settlement is presumed to be in his right, and not in right of his family, for this is the general experience and conduct of men. The course of human affairs is such, that the husband and father is the head of the family, exercising authority over his wife and children, maintaining and protecting them, and for this purpose obtaining the means by the acquisition of property. So general is this fact that it furnishes a ground of

[Cambria Iron Co. *v.* Tomb *et al.*]

belief, that when he enters upon a wild tract of land, settles and builds upon it, and makes it the means of supporting his family, he intends to acquire the title in himself, while they are with him and assist his labours, because of their dependence upon and relation to him.

But what relation of authority, dependence, or service, either in law or of general fact, exists between an unmarried brother and his adult maiden sisters, which, when they are found living together in one family, will confer upon him a title to the products of the labour of all, and make him liable for the maintenance of all? The family relation it is true *may* be such, as a fact proven as other facts are, but it is not generally such, and no legal presumption therefore can be raised. A brother has no legal authority over his sister; her labour is not his, and the products of her hands do not belong to him. She can claim no maintenance or protection of him, and he is not liable for her acts or her support. Even the Poor Law, which is founded upon the relationship of blood and affinity, confines its obligation of support to those who stand in the lineal relation of blood, and in the marriage relation of affinity. If we examine the laws which confer rights upon those who stand in the kindred relation of brothers and sisters, we find they are the peers of each other, standing upon an equal footing as to property derived by descent, and in their claims upon the parents, from whom they take a common origin. Even primogeniture no longer exists, having disappeared before that sense of equality among brethren which juster notions of right have produced.

Brethren should dwell together in unity, but this does not countenance superiority. There is nothing in their family relation, unless when arising from nonage or mental infirmity, which can for a moment justify the presumption at law that the property acquired by joint labour belongs to one only. A settlement or improvement right is essentially the product of labour, and there is no reason in law which should confine the benefit of their joint labour in accomplishing it to the brother alone. The court, therefore, rightly left it to the jury upon the facts in the case.

We cannot say there was actual error in the answer of the court to the second point, yet the absolute form of negation in which it was couched, had some tendency to mislead the jury. This point did not as the first ask the court to declare a legal presumption, but to leave the relationship and family connection to the jury, as facts from which they might infer the knowledge of the sisters of the sale by their brother to Stewart. The court could not say they *should* draw this conclusion from these facts; yet the short and absolute negative given to the point may have led the jury to suppose, they could not legally use the facts in proof of knowledge. A more proper answer would have been, to

explain the natural presumption arising from the facts, leaving it to them to form the conclusion which the weight of the circumstances might make upon their own minds.

The answer to the fourth point was made in view of the evidence. Knowledge is the gist of the point, for upon this alone could an estoppel in equity arise. Upon looking through the evidence I discover nothing from which a jury could sufficiently draw the inference. The only facts were the relationship and living together in one family. While these facts might be taken and weighed by a jury, together with other circumstances from which a conclusion of knowledge might be drawn, yet standing alone they would not justify the inference in order to lay the foundation of an estoppel. Estoppel shuts the mouth and prevents it from asserting the truth, but from the nature of this legal effect, and the principles upon which equity acts, the proof of the fact which has this legal operation must be full and convincing. It is quite possible, and somewhat probable, that owing to the kindred and family connection, they may have come to a knowledge from William of his sale to Stewart. But to make the most of it, the presumption is not full or convincing, uncoupled with other facts, and equity clearly will not deny the truth and create an estoppel upon uncertain inferences. It is not equitable to visit a party with such important consequences upon such a slender ground. Hence, there being no other facts in the evidence leading to a presumption of knowledge, we cannot say the court erred in saying there was no evidence sufficient to affect the conscience of the girls; and on this the answer to the point hinged. The case of Trefts v. King, 6 Harris 160, referred to, is not in point. There was not only the relationship of father and son in that case, but proof also of the knowledge of the son of the giving of the receipt for the money, which expressed the trust on the face of it, and his acknowledgment of the money being furnished by King & Co. to his father to purchase the land. In fact there was ample evidence beyond the relationship of his knowledge of the trust.

The fourth point was correctly answered in view of the evidence. There were no facts upon which the point could be fairly made. Nor do we see any error in the answer to the seventh point. The lease was to William Tomb alone, and bore date April 1st 1851, while his deed to Stewart bore date 1847, and was filed in the suit on the agreement for the sale of the land on the 27th of January 1851, the same day judgment was given on the verdict in his favour. Stewart had made no improvements upon the land. Upon the evidence it does not appear that Stewart suffered any injury in consequence of the silence of the girls, at the time of the giving of the lease to William, while it appears that the moving cause of giving him the lease was to get

[Cambria Iron Co. v. Tomb *et al.*]

him out of possession of another tract they wished to put Davis upon. Certainly there is nothing in such a state of facts to give rise to an estoppel against their *title* as tenants in common, whatever might have been the effect upon the possession, if they had come into it under the lease.

As this case must go back for a new trial upon an exception to evidence, the assignment of error to the entry of judgment upon the verdict as rendered becomes unimportant. But it may be proper to say, that the verdict was perhaps amendable. William Tomb had confessed judgment, and in the trial between the plaintiffs and his sisters the co-defendants, the jury found for the defendants all the undivided two-thirds of the tract of land in dispute, omitting to say what the verdict plainly meant, to wit, that for the other undivided third they found for the plaintiffs. No special defence was taken, and it is clear that as suit was brought against all the defendants for the whole tract, and so tried, the jury intended to find a verdict for the plaintiffs for one-third, and for the defendants for two-thirds. Burrows *v.* Heytham, 1 Dallas 134, taken in connection with Seitz & Co. *v.* Buffam, 2 Harris 70, would probably justify the amendment. See also Sparkman *v.* Byers, 6 S. & R. 385; Paddle *v.* Hollingshead, 9 Id. 285. But we think the court below erred in admitting William Tombs, one of the defendants, to testify for his co-defendants. He was a party to the record. That a party to the record is incompetent as a witness, on the ground of policy, has become too firmly fixed to be changed as a rule of practice, except by legislation.

In Wolf *v.* Fink, 1 Barr 435, a defendant against whom an award was made and not appealed from by him, who was also a certificated bankrupt, was offered as a witness and rejected. In this court his rejection was held good on the ground of policy alone, it being conceded he had not a particle of interest in the cause. Justice Rogers cites numerous authorities for this position, and states that it extends to cases where judgment has gone by default, and where no service of the writ has been effected. Parke *v.* Bird, 3 Barr 360, carries the case beyond that of Wolf *v.* Fink to a party not served with the writ, and who was also released by the party trying the cause. Irwin *v.* Shoemaker, 4 Barr 199, made a step still farther, and decided that a co-defendant who was a certificated bankrupt, as to whom a *nolle prosequi* had been entered, and who executed a release of any surplus to his assignee in bankruptcy, was incompetent on the score of policy alone. There are other cases fully recognising the principle of these.

On the argument, I had supposed a distinction might be drawn between cases of contract and those in tort; ejectment being properly classed with the latter. But the rule has been too conclusively established in ejectment to permit it.

[Cambria Iron Co. *v.* Tomb *et al.*]

In Lies *v.* Stub, 6 Watts 48, C. J. Gibson held, that a defendant in ejectment was incompetent for his co-defendants as a party to the record, notwithstanding his interest in point of fact lay with the plaintiff's recovery; and the judgment was for this with other reasons reversed.

That case came up a second time in the name of Stub *v.* Lies, 7 Watts 43. It was then held that the witness, though he had disclaimed, abandoned possession, and had not appealed from an award against him, and was willing that the contract with the plaintiff should be carried into execution, was still incompetent. Again, in Kirk *v.* Ewing, 2 Barr 453, it was held that a defendant served with the writ, who had been permitted to withdraw his plea and disclaim, could not be admitted as a witness for his co-defendants. Rogers, J., remarked: "There is no rule better established, than that a party to the record cannot be examined as a witness, and this not on the ground of interest, but from considerations of policy." He also held, that he was interested by reason of the costs, and of the liability for *mesne* profits.

The question of interest in the witness, is one that it is unnecessary to decide in this case, the ground of policy alone being sufficient according to a long line of adjudication to exclude him.

> The judgment is reversed, and a *venire facias de novo* awarded.