## Caldwell, Appellant, *v.* Taylor et al.

*Decedents' estates—Contract to convey real estate for services—Woman in position of daughter—Evidence—Performance.*

1. In suit by a woman against executors to enforce an alleged contract by testator to convey real estate to her in consideration of services to be rendered to him and his wife during their lives by plaintiff, where it appears plaintiff has occupied from childhood the relation of daughter to decedent, although not by legal adoption, the legal liability of the foster-parent must be clearly proved by evidence which either plainly showed the actual making of the contract or its subsequent acknowledgment, in explicit, consistent and unequivocal terms, by the contracting parties in the presence of each other; in the absence of such proof plaintiff cannot recover.

2. In such case, plaintiff must also show the rendering of the services contracted for during the life of the testator and his wife.

Argued January 12, 1923. Appeal, No. 218, Jan. T., 1923, by plaintiff, from judgment of C. P. No. 5, Phila. Co., March T., 1920, No. 1783, for defendant n. o. v., in case of Rebecca J. Caldwell v. Sarah Margaret Taylor and Jennie Taylor Connor, Executrixes of estate of John R. Taylor, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON and SCHAFFER, JJ. Affirmed.

Assumpsit on contract. Before HENRY, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $9,861.60, on which judgment was entered for defendant n. o. v.  Plaintiff appealed.

*Error assigned,* inter alia, was order for judgment n. o. v., quoting it.

*Richard T. McSorley,* with him *A. S. Ashbridge, Jr.,* for appellant, cited: Wright v. Nulton, 219 Pa. 253; Ackerman v. Fisher, 57 Pa. 457; Bash v. Bash, 9 Pa. 262; Kauss v. Rohner, 172 Pa. 481; Graham v. Graham, 34 Pa. 475.

*Frank B. Stockley,* for appellees, cited: Barhite's App., 126 Pa. 404; Titman v. Titman, 64 Pa. 480; Pollock v. Ray, 85 Pa. 428; Ackerman v. Fisher, 57 Pa. 457; Edwards v. Morgan, 100 Pa. 330; Wright v. Nulton, 219 Pa. 253.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, February 19, 1923:

Plaintiff, Rebecca J. Caldwell, sued the executrixes of the estate of John R. Taylor, deceased, in assumpsit, to recover on an alleged contract to reward her for services rendered to the decedent during his lifetime; the jury gave a verdict in her favor, but the court below entered judgment n. o. v. for defendants; plaintiff has appealed.

The statement of claim avers that plaintiff, when about twenty months old, was taken by decedent and his wife into their home; that, when she was fourteen years of age, decedent orally promised, in consideration that "plaintiff would serve as a domestic and housekeeper and look after, in sickness and in health, him, the said John R. Taylor, and Rebecca, his wife, during the term which he, the said John R. Taylor, should determine, ......he would compensate her for her services......at the time of his death"; that, in 1899, some years after this promise, "in consideration of the services performed

by plaintiff......and for the further condition that she ......would marry Robert G. Caldwell, who was related to the wife of said John R. Taylor," decedent orally promised plaintiff "he would compensate her for the services which she had performed during her single life, for him and his wife, by devising to her at his death" certain premises and contents at 1816 South Broad Street, Philadelphia. Plaintiff then avers that she married and performed the services required by her agreement with decedent, but the latter, "not regarding his said promises," wholly neglected to convey the property in question to her; that, on the contrary, he sold the real estate, and neither he nor his executrixes have paid her for the services mentioned; therefore plaintiff claims, as damages, the sale price of the property together with the value of its contents, plus interest from the date of Taylor's death.

This being a claim against a decedent's estate, plaintiff was disqualified from testifying; she produced no witness who was present at the time the alleged contract or contracts were made, but depended on the evidence of certain persons to whom decedent and his wife had talked after the making of the promises relied on by plaintiff.

The court below, in its opinion entering judgment for defendants, held that a contract had not been proved and, even if the testimony offered should be accepted as sufficient to that end, plaintiff could not recover, because she had "not shown full performance......on her part."

Elizabeth V. Maguire, the first important witness produced by plaintiff, testified she was very intimate with Mr. and Mrs. Taylor; that they always spoke of Mrs. Caldwell as their daughter, and she of them as father and mother,—in short, while Mrs. Caldwell had not been adopted formally, she occupied the position of a daughter in the Taylor family, and was so "regarded" by her foster-parents. The witness testified that "about 1911

or 1912," Mr. Taylor said "Rebecca [meaning Mrs. Caldwell] will be well taken care of, this house and all that is in it belongs to Rebecca, because of her goodness and her services to us and because of her obedience in marrying Robert Caldwell." In this decedent makes no mention of a contract to convey the property at a future time; on the contrary, he declares it already belongs to plaintiff. Moreover, the witness did not say, directly, that Mrs. Caldwell was present at the time the alleged declaration was uttered.

Immediately after the above-quoted matter, the witness testified to another conversation, "about 1913," when the wife of decedent told Mrs. Caldwell that she, the plaintiff, "would be well taken care of," that she "could at least be assured of her home *all her life,*" as "1816 South Broad Street was to be hers with all its contents, because of the services she had rendered them and because she had proven such an obedient daughter and had done as they asked her to, to marry this Robert Caldwell." It will be observed this declaration contains no reference to a contract to convey the property, gives no details of such an undertaking, and does not tell how the house was to become Mrs. Caldwell's or what estate she was to take therein,—it indicates, if anything at all pertinent to the case, that she would take a life estate and not a fee. Besides, the alleged declaration was made by Mrs. Taylor and not by decedent; in fact, it is not even stated that decedent was present at the time.

Another instance the witness testified to, is an occasion when plaintiff, Mr. Taylor and Mrs. Taylor were all present. There was some talk about selling the Broad Street house, and Mr. Taylor said to his wife, "This can't be done, mamma; we have promised this house and all that is in it to Rebecca." The date of this declaration appears in cross-examination as "about 1913." There is nothing in it to show a contract to convey property; it

does not even state when or how plaintiff was to get the property.

The above excerpts contain the strongest testimony in plaintiff's favor given by the witness Maguire.

The next witness was a man named George W. Caldwell (no relation to plaintiff). He testified that "about 1892," decedent, in the presence of plaintiff, said he had "just made an agreement" with her that, "if she stayed with them and took full charge of the house and looked after him and mamma," he, "at his death," would leave the house to plaintiff "for such services rendered to them." This declaration does not say whether the property was to be left to plaintiff for life or in fee, which omission has some significance in view of the previous testimony indicating that a life estate was, or may have been, intended. The declaration does, however, contain the statement that plaintiff agreed to take "full charge of" the house and look after decedent and his wife during his life.

The witness further told of a declaration alleged to have been made by decedent "about June, 1899," or "just before the wedding" of plaintiff. At that time, he stated, decedent said, in the presence of plaintiff, as the latter had stayed with them "as long as she had," and "was marrying Robert Caldwell," if she "would come down and look after the house as often as possible," he "would still hold to the former agreement originally made and leave the house......to her." This declaration speaks of holding to the former agreement, and not making a new one in consideration of the marriage; it also contemplates plaintiff shall continue to look after decedent's house.

Caldwell then testified that, about a week subsequent to the marriage, in the presence of plaintiff, decedent told him he had made an agreement with plaintiff, on her wedding day, to turn over the house and contents to her, at his death, "for marrying Robert and carrying out our wishes." This testimony, when taken in con-

nection with that before quoted, evidently contemplates decedent's wishes, as to plaintiff's looking after him and his wife during their lives, at least in a measure, being carried out by her.

The next item of testimony concerns a declaration made by decedent "about December, 1915," when he is alleged to have taken an oath, by the uplifted hand, to leave the house and contents to plaintiff; and then there is testimony, by the witness Caldwell, to the effect that, in 1916, decedent said, in the presence of plaintiff, "he had made a new will in which she would be well taken care of"; adding, "he had left the house......and contents to her......at his death, for services she had rendered them in carrying out their wishes, and......in marrying Robert."

There is other testimony along the same lines, but not so strong; and it may be noted that much of the evidence above recited is in the form of conclusions of the several witnesses, rather than statements of the exact words used by decedent in making his declarations. Certain of plaintiff's witnesses testified that decedent had stated the agreement to be that, should he die first, his wife was to have the property in controversy during her life, and plaintiff was not to get it till after the widow's death. As a matter of fact, the wife predeceased her husband, but this variation in the proofs, as to the terms of the contract, is a matter to be noted when considering the quality of the evidence depended upon by appellant.

According to plaintiff's statement of claim, she expressly sued to recover compensation for services rendered to decedent and his wife during their lives; she did not set up a quantum meruit, but what she averred to be a contract by decedent to leave her certain real and personal property in payment for her services: true, she also averred that decedent, some years after making the alleged contract, put "a condition" to it,—that she should marry a certain man,—but both the original contract and its variation, or the subsequent one, as to her

marriage, according to the testimony produced by plaintiff, required that she should continue to serve decedent and his wife during their respective lives. Since plaintiff occupied a close family relation to decedent, being, according to the testimony relied on by her, considered and treated as though she were a daughter, the legal liability of her foster-parent had to be clearly proved by evidence which either plainly showed the actual making of the contract or contracts pleaded, or their subsequent acknowledgment, in explicit, consistent and unequivocal terms, by the contracting parties in the presence of each other, and then she had to show fulfillment of her obligations thereunder; plaintiff did neither of these things.

We agree with the court below that the present claim fails both because the evidence does not measure up to the standard required in such a case, and that, if we accept the declarations testified to as showing an agreement on decedent's part to leave the property in controversy to Mrs. Caldwell, it also shows an agreement by her to care for decedent and his wife, in their home, during their lives, without any full release of that obligation, even after plaintiff's marriage; and there is no testimony showing performance on her part in that regard.

Other points of law are relied on by the court below, and argued in the briefs, but they are not essential to our decision and need not be discussed. On the whole, we are not convinced of error in the disposition of this case.

The judgment is affirmed.