In Re: Estate of Edward D. Johnson.

Argued March 6, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*C. W. Dickson,* for appellant, cited: Rosencrane v. Johnson, 191 Pa. 532; Carother's Estate, 41 Pa. Su-

perior Ct. 128 and McTamany's Estate, 44 Pa. Superior Ct. 484.

*R. S. Hemingway,* and with him *Ralph R. John* and *J. Atlee Cryder,* for appellee. The mere relationship of nephew and uncle does not in itself create a presumption of gratuitous service. Kerr v. Wilson, 284 Pa. 541 and Griffin Estate, 96 Pa. Superior Ct. 185.

OPINION BY STADTFELD, J., April 17, 1933:

This is an appeal by Thressa Johnson, Administratrix of Estate of Edward D. Johnson, deceased, and heir and distributee in her own right, from the allowance, in distribution, of the claim of Charles Smith, a brother-in-law of decedent, of $840 based on an express contract for board, lodging, care and washing for decedent's minor son, Edwin Johnson, from November 29, 1926 to the date of decedent's death, December 22, 1930, 210 weeks at $4 per week.

The first wife of decedent died sometime in November, 1926, when Edwin was seven years of age and decedent's home was broken up. At this time Edwin went to live at the farm of Charles Smith in Madison Township. Mrs. Charles Smith is an aunt of Edwin Johnson and a sister of decedent. His father, the decedent, sold his farm, and in January, 1927 took up his residence with Charles Smith, where he worked without pay for approximately a year. Sometime in 1928, the decedent obtained a position at the Danville State Hospital, where his salary was $55 a month, together with board and lodging. It is undisputed that Edwin lived and made his home with the claimant for the period covered by the claim; that the claimant furnished Edwin with board, lodging, care and washing during this period; that he was never paid for these services, and that he never made demand for payment. Throughout all the time decedent's son was living,

with claimant, decedent was a man of property and had substantial cash accounts in banks. From the testimony it appeared that it is customary to pay board by the week in the community where this claim arose. Edwin, during the time he has been living with claimant, did various chores about the farm, such as carrying wood, feeding and bedding the stock, etc., and during the latter two years did more substantial work on the hay wagon, shocking and shelling corn, etc. The decedent purchased all of his son's clothing. The foregoing facts were not disputed. The dispute lies in the fact that on behalf of claimant it is claimed that there was an agreement to pay for the services rendered to the decedent's son, while on behalf of accountant it is claimed that there was no agreement of any kind to pay for said services and that the same were rendered gratuitously, without any expectation of pay. The evidence as to the value of the services, $4 per week, is uncontradicted, if the claim should be allowed.

Testimony of a neighbor of claimant was produced showing that at the time the decedent took the boy to claimant's house, the decedent said he had no home and didn't know what better to do than to take the boy to stay with his sister, the claimant's wife; that he intended to pay them for the boy's keep, and that when he, the decedent, was at his sister's home he would pay for his own board. This conversation took place between the witness and Mr. Johnson the decedent. No one else was present. He never heard any conversation between claimant and Mr. Johnson.

Two daughters of the claimant testified as to the period the boy was at their home, as to the services rendered, and one of them testified that on several occasions she heard the decedent tell the claimant he would pay for the services rendered to his minor son; the other daughter testified "there was no agreement

made. He said he intended to pay." The boy, himself, also testified, at one time stating that he never heard his father say anything to claimant, and at another time that he said he meant to pay him.

Testimony of the decedent's daughter, her husband, and the decedent's second wife was produced to show that in 1930 the decedent in their presence, but not in the presence of claimant, said he did not pay for his son's board because claimant would not accept it, but this testimony the court below held inadmissible as hearsay. Another son of the decedent testified that before the boy went to live at the claimant's home, the decedent said he didn't have any home and didn't know what to do, and that claimant's wife said the boy had no home, that she would give him one and he could help her.

The auditor disallowed the claim, but the orphans' court, Evans, J., sustained the claimant's exceptions to the auditor's report, allowed the claim and directed the auditor to make distribution accordingly. From the decree allowing said claim this appeal is taken.

The auditor found that the services rendered decedent's son were gratuitous and without expectation of pay, that the son of decedent lived with the claimant as one of the family, which negatived intention to demand payment for his support; that the evidence was insufficient to support either an express or implied contract on decedent's part to pay for such support, and that the evidence was also insufficient to sustain a legal claim against the estate upon a quantum meruit.

The court below, in passing upon and sustaining the exceptions to the auditor's findings and conclusions, relied upon Gibb's Estate, 266 Pa. 485. In that case an aunt presented a claim against the estate of her deceased nephew for board, room, washing, etc., for $30 per month for a period of six years, less a credit of $25. It appeared that the deceased

nephew lived with his aunt during this time, that the services were rendered and that no demand for payment was made. It also appeared that the deceased nephew was a druggist 31 years old at the time of his death, had ample funds in bank to meet his necessities and that no one was dependent upon him for support. The nephew in his lifetime had stated to witnesses that he was paying his board, but admitted at the same time none in fact had been paid. In that case the Supreme Court in an opinion by Mr. Justice FRAZER, now Chief Justice, said, p. 488: "This, however, is not a case for the application of the presumption of periodical payments as in cases of claims for domestic services. The claimant did not occupy the position of a servant; the relations between aunt and nephew were of such peculiar and exceptional character that the presumption of payment arising in the ordinary case of services rendered is not applicable: Ranninger's App., 118 Pa. 20; Lewis's Estate, 156 Pa. 337."

In Gilbraith's Estate, 270 Pa. 288, the Supreme Court held that the presumption in relation to domestic services applies also to claims for boarding and nursing. We quote from the opinion of Mr. Justice SIMPSON in that case, p. 290: "It is claimed on her behalf that heretofore this presumption has been limited to cases of domestic service. If this was so, we would now unhesitatingly extend it to claims for boarding and nursing also, for in this country the custom is substantially universal to pay therefor at stated periods exactly as it is in cases of servant's wages; and it is at least as unusual for boarding house mistresses to allow payments due for board to accumulate for five or six years, as it is for servants to allow wages so to do. Presumptions, after all, 'are founded on experience and common observation. When a connection is found to exist between things, so that when one occurs the other is known always or generally to

follow, this connection becomes the foundation of a legal presumption of the existence of the latter from the proof of the former': Cambria Iron Co. v. Tomb, 48 Pa. 387, 391; and hence, since 'experienced and common observation' have shown that periodical payments are 'known...... generally to follow' exactly the same in each of these classes of cases, on principle the presumption should and does apply equally to each. ...... Moreover, the application of the custom is expressly recognized here, for appellant claims to be paid at so much a week; and the witnesses, as to the value of her services, testified they are usually recompensed at a given rate each week. ...... We said in Carpenter v. Hays, 153 Pa. 432, 434, and have since frequently repeated, 'without variableness or shadow of turning.' therefrom, that 'Claims against a dead man's estate, which might have been made against himself, while living, are always subjects of just suspicion, and our books, from Graham v. Graham, 34 Pa. 475, to Miller's Est., 136 Pa. 239 (249) are full of expressions by this court of the necessity of strict requirement of proof and the firm control of juries in such cases.' And again (page 435) 'The presumption grows stronger as each period of payment goes by. In the nature of things it is less potent against a claim for two or three months wages, than for two or three years. ...... As said by our late Brother CLARK in Gregory v. Com., 121 Pa. 611, 'the presumption will gather strength with each succeeding year, and the evidence to overthrow it must, of course, be correspondingly increased.' Experience has demonstrated not only the wisdom of these rules, but the necessity for even more strictly adhering to them, and we propose to use the light thus cast upon our pathway.''

The evidence in support of the claim in the instant case was based upon oral testimony of the witnesses, as to conversation with Edward Johnson, the decedent,

during his lifetime. No claim had ever been made during the lifetime of the decedent throughout the four year period when decedent's son lived with the claimant, his uncle, although the decedent was a man of property and able to pay. The comments of the auditor on the evidence in his report are most pertinent. "The testimony of the claimant's witnesses was for the most part the testimony of interested witnesses— the children of claimant. The testimony of all claimant's witnesses was based largely upon the loose declarations alleged to have been made by the decedent, such as: By Mr. Derr—"He (the decedent) said he intended to pay them (Smiths) for the keep of the boy." By Edwin Johnson—"He (the decedent) said he meant to pay him (Mr. Smith) for the keep of me." These were mere loose expressions of the decedent of a willingness to pay in the future, not elicited in response to any request by the claimant and not evidence of an intention to be presently bound. The essentials of an agreement were lacking: Wall's Appeal, 111 Pa. 460, 461."

Was the court justified under the evidence, in overruling the auditor's findings of fact?

There was sufficient evidence upon which to base the finding of a family relationship which would rebut the implication of a promise to pay. Decedent lived with the claimant's family for about one year, but even the decedent himself did not pay board during the time that he and his son were living with claimant. Decedent, as the testimony showed was able to pay. No demand was ever made. Although the evidence as to such services was as to a certain rate per week, 210 weeks were allowed to lapse during decedent's lifetime without any payment being made or any demand for the same. As stated in Currey's Estate, 26 Pa. Superior Ct. 479, 481: "Where a considerable period elapses after such services have been rendered

without demand for compensation it is presumed they were paid at the time or that they were rendered without expectation of payment from motives of benevolence or affection, a presumption which is greatly strengthened as between relatives.''

As stated in Reynolds, Executrix, v. Williams, Executor, 282 Pa. 148: ''This is one of the class of claims against a dead person's estate that must be subjected to the closest scrutiny and only allowed on strict proof. See Gilbraith's Est., 270 Pa. 288, 294, 295; Caldwell v. Taylor et al., 276 Pa. 398; Hirst's Est., 274 Pa. 286; Pollock v. Ray, 85 Pa. 428; Graham v. Graham's Executors, 34 Pa. 475. In Wall's App., 111 Pa. 460, 471, Mr. Justice GREEN, for the court says, 'Claims of this nature against dead men's estates, resting entirely in parol, based largely upon loose declarations presented generally years after the services in question were rendered, and when the lips of the party principally interested are closed in death, require the closest and most careful scrutiny to prevent injustice being done. We cannot too often repeat the cautions we have so frequently uttered upon this subject and we feel that the present occasion is one which demands both their repetition and their application.' ''

In our opinion the testimony in this case is not sufficient to establish an express contract nor such from which a contract can be implied. There is nothing in the opinion of the court below reciting the facts which justify the overruling of the auditor's report in this respect. We are of the opinion that the claim of the appellee should have been rejected.

The assignments of error are sustained, the decree of the court below in allowing said claim is reversed at the cost of the appellee, and the record is remitted with instructions to strike out the allowance of $840 to Charles Smith from the distribution and correct the decree accordingly.