## Lebo Estate.

Argued January 9, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Howell C. Mette*, with him *Rhoads, Sinon & Reader*, for appellant.

*Henry E. Harner*, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 28, 1961:

Ira T. Lebo died testate on November 28, 1957. On May 26, 1958, Susan E. N. Peffley, a cousin of Lebo's mother, filed a claim against the estate for $6500 in payment of services assertedly rendered to Lebo over a period of six years. The executor disallowed the claim and Mrs. Peffley excepted to the account. The Orphans' Court of Dauphin County, after a full hearing, sustained Mrs. Peffley's excep-

tions,* and ordered the executor to amend his schedule of distribution, allowing $5,000 to Mrs. Peffley in payment of her claim. The executor, Donald C. Waggoner, appealed.

The appellant contends that there is no evidence of a contract between the testator and the claimant for payment of the services in question. But Mrs. Peffley's claim is based on quantum meruit and not on contract. The obligations which a man incurs during life, no less than his good deeds, live after him and, to the extent that he lives on through his property, he must discharge the obligations he failed to meet while alive. This is not to say that the record shows Mr. Lebo to have been an unjust man. On the contrary, generous legacies to charities enumerated in his will would attest to a benevolent nature, but, being human, he could, and possibly did overlook the most obvious of obligations, namely, that of paying for services rendered to one in connection with the very property which became the vehicle for his posthumous generosity.

Lebo owned a grocery store which occupied the first floor of a building with two floors given over to apartments. Mrs. Peffley helped Lebo in his grocery store business and attended to all transactions involving the rental of his apartments. She handled his affairs at the bank. One witness testified that Mrs. Peffley "made investments, bought bonds or whatever they buy and if he had any other kind of banking business she would take care of it." She paid his household bills and when he was hospitalized she

---

* There was another exception to the account on the basis that the executor had failed to award to Mrs. Peffley certain government bonds. At the hearing, the executor conceded the bonds were due the claimant. Thus, no further mention will be made of that matter in the opinion.

made arrangements for nurses and special care and visited him every day to receive his instructions, which she dutifully discharged.

The services Mrs. Peffley performed for Lebo usu-ally consumed four or five hours a day, two or three days a week. The vice president of the Central Trust Capital Bank testified that Mrs. Peffley would come to the bank in connection with Lebo's affairs three or four times a week.

Appellant's counsel urges in his brief that the de-scribed services were "trivial." What is trivial is strictly a matter of comparison. Even an earthquake of sizable proportions is trivial against an atomic blast which lays waste half a continent. Mrs. Peffley's services were indeed trivial compared to the job of managing Macy's Department Store, but for Ira T. Lebo those services were of major importance and re-lieved him of many worries so that he could relax and enjoy the blessings of tranquillity in his declining years. The lower court estimated Mrs. Peffley's serv-ices to have been worth $5,000. The record amply justifies the reasonableness of this appraisement.

After decrying the nature and value of the services rendered by Mrs. Peffley, the appellant then argues that Mrs. Peffley was probably paid for them anyway. He says through his counsel: "No evidence to show non-payment was introduced."

How does one prove that he was not paid, except through the assertion thereof? Of course, Mrs. Peff-ley was disqualified from testifying because of the Dead Man's Act which legally sealed her lips as death sealed those of the decedent. But the fact that she made a claim for payment is in itself a denial of pay-ment. The appellant executor, however, was not re-quired to stand mute, nor was he denied access to the records which would have definitively revealed pay-ment if there had been payment. In point of fact, the

executor himself who prepared Lebo's income tax returns, testified that Lebo "never included any payments in his accounts for any payments to Mrs. Peffley for services rendered."

The appellant argues that Mrs. Peffley expected a larger legacy than the $10,000 which the decedent left her through his will, and that because of that assumed disappointment she brought her claim for services. But motivation, even if it were proved, (and there is no evidence of any such motivation aside from the spirited argument of appellant's counsel), cannot take the place of substantive proof. If Lebo paid Mrs. Peffley for her services, it would certainly seem strange that over a period of six years there would not be some proof, oral or documentary, to that effect. The record is as bare as the Sahara of any such evidence.

Then the appellant contends that in cases of this kind there is the presumption of payment. The lower court well responded to this contention as follows: "It must be remembered, however, that this woman was not a domestic or a nurse or a person of that type. Her business was one of trust and responsibility. What services she rendered were rendered in connection with the store business and the personal fiscal business of the decedent. We have no proof that he ever expected these services to be rendered gratuitously nor do we have any proof that he ever paid for them."

In the case of *Rohrbach v. Ross*, 75 Pa. Superior Ct. 536, which had facts strikingly similar to those in the case at bar, the Superior Court said: "The legal presumption that the plaintiff was regularly paid during the lifetime of the decedent had no application to the present case, not only because of the relations of intimacy assumed by the decedent toward the claimant, but because the uncontradicted testimony shows that the services performed by the claimant were far beyond and outside of the range of domestic services."

In *Istocin's Estate*, 126 Pa. Superior Ct. 158, 163, the Superior Court said: "Claimant was not a domestic servant, and the services which he rendered were not of a domestic character. Hence the presumption that payment was made at regular periods has no application. The claimant did not come within the class to which the presumption is applicable. Mack's Estate, supra; Gibbs' Estate, 266 Pa. 485, 110 A. 236."

In *Lach v. Fleth*, 361 Pa. 340, this Court stated that in claims of this character, the claimant has the burden of proving: "(1) the performance of the services, (2) the decedent's acceptance of them, and (3) their value."

We are satisfied that the record shows that the claimant met these three requirements, and the order of the Court below is affirmed. Costs on the appellant.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

This is a claim against a decedent's estate for personal services based on a quantum meruit. The claim is made by Mrs. Susan Peffley, decedent-testator's *cousin* and his only near (surviving) relative. Countless decisions of this Court have held (a) that claims against a dead man's estate are viewed with suspicion when they could and ordinarily would, if genuine, and reasonable time permitted, have been made in decedent's lifetime, and (b) that *all* claims against a dead man's estate must be proved by evidence which is clear, precise and indubitable, or, as is sometimes and more preferably expressed, direct, clear, precise and convincing: *Liggins Estate*, 393 Pa. 500, 143 A. 2d 349; *Stafford v. Reed*, 363 Pa. 405, 70 A. 2d 345; *Consentino v. Vittoria*, 394 Pa. 538, 147 A. 2d 839; *Cameron Estate*, 388 Pa. 25, 130 A. 2d 173; *Roberts Estate*,

350 Pa. 467, 39 A. 2d 592; *Mooney's Estate,* 328 Pa. 273, 194 A. 893; *Sanders Estate,* 370 Pa. 208, 87 A. 2d 923; *Moore Estate,* 349 Pa. 236, 36 A. 2d 812; *Bangert v. Provident Trust Co.,* 314 Pa. 442, 171 A. 564; *Schwoyer's Estate,* 288 Pa. 541, 136 A. 798; *Gross's Estate,* 284 Pa. 73, 130 A. 304; *Peiffer's Estate,* 261 Pa. 209, 104 A. 576. Likewise the existence of a family relationship is an indication that such services were not rendered for compensation: *Braden Estate,* 363 Pa. 42, 47, 68 A. 2d 734; *Peiffer's Estate,* 261 Pa., supra. See also *Lach v. Fleth,* 361 Pa. 340, 349, 64 A. 2d 821; *Hertzog v. Hertzog,* 29 Pa. 465, 468; *Seiler Estate,* 169 Pa. Superior Ct. 359, 82 A. 2d 556. Furthermore, no recovery can be had against a decedent's estate for services rendered in expectation of a legacy: *Consentino v. Vittoria,* 394 Pa., supra; *Braden Estate,* 363 Pa., supra; *Swieczkowski v. Syniewski,* 294 Pa. 323, 144 A. 141; *Gilbraith's Estate,* 270 Pa. 288, 113 A. 361.

Applying these principles to the evidence in this case, Mrs. Peffley utterly failed to meet or satisfy the high standard of proof required by the above mentioned cases.

Claimant was given by decedent in his lifetime $4500 in U. S. Government (jointly owned) Bonds; she likewise had a joint safe deposit box and a joint bank account with decedent which was created, "stocked" and maintained solely with his money. Claimant was also given a legacy in his will of $10,-000 out of a total gross estate of slightly more than $110,000. Not satisfied, she now asks compensation for six year old personal services which would usually be rendered gratuitously by any near relative, either because of affection and family ties, or because of the money and bonds she was receiving in his lifetime, or in the hope of receiving a legacy.

Mrs. Peffley claims compensation for rendering personal services to decedent for which the Orphans' Court awarded her $5000. These services allegedly occurred over a period of 6 years and consisted of depositing checks *occasionally* in decedent's and *regularly* in their joint banking account (*the proceeds of which she succeeded to at his death*), paying Lebo's household bills, taking care of Lebo's father, hiring a nurse for Lebo while he was in the hospital, looking after Lebo while he was in the hospital, engaging Lebo's housekeeper, renting two apartments owned by Lebo which were located above his grocery store, and making funeral arrangements for Lebo and his parents. Mrs. Peffley purchased nine U. S. Government Bonds, Series H, for Lebo, five of which were purchased in their joint names. Upon Lebo's death Mrs. Peffley withdrew the balance remaining in the joint checking account and succeeded to the five Series H Bonds totaling *$4500*. It is apparent from the record that the bulk of the transactions for which Mrs. Peffley claims compensation involved property of which she was a co-owner. It seems inconceivable to me that one co-owner should be allowed to claim compensation from the other co-owner, in the absence of a clear and express agreement to the contrary, for deposits made to a joint bank account or the purchase of jointly owned property. Furthermore, how much time was spent by claimant in any of the aforesaid services was undisclosed, *and equally important there was no testimony as to the reasonable or usual value of such services.** For each and all of these reasons claimant could not recover.

The language of the Court in *Schleich's Estate,* 286 Pa. 578, 134 A. 442, is particularly apposite (pages 581-582): "Under the foregoing facts, the evidence

---

* See infra.

was clearly insufficient to overcome the presumption that the services rendered were paid for regularly. There were ample funds at all times to pay the debts of testatrix as incurred. It is also not unreasonable to presume, the claimant's son [in the instant case, the claimant herself] who had charge of the business affairs of testatrix in her lifetime, and attended to the payment of her bills, would have seen that his mother [she herself] was paid, from time to time, whatever sum she was entitled to receive, or if an agreement existed as to deferred payments, would have taken precaution to have substantial evidence of such understanding. . . . The measure of proof required in such case has been stated so often that we deem unnecessary further discussion than is found in the opinion of this court in Gross's Est., 284 Pa. 73, 75, as follows: 'The matter, as it thus presents itself, is resolved into a contest against an estate by one who was in a position to assert his rights long before the death of the other party, at a time when there was sufficient money on hand to pay it, and when the other party, the one most interested, was in being to defend his rights. To successfully assert a claim against a dead man's estate is being steadily made more difficult. To establish such claim [for wages as housekeeper] by parol evidence requires proof direct and positive. The terms of the liability must be certain and definite: Caldwell v. Taylor, 276 Pa. 398, 404; Goodhart's Est., 278 Pa. 381; Hirst's Est., 274 Pa. 286, 288; Reynolds v. Williams, 282 Pa. 148. . . .' "

In *Kenna Estate,* 348 Pa. 214, 34 A. 2d 617, the Court said (page 217): "A claim against the estate of a decedent may not be established by loose declarations. It must be proven by evidence as *definite and precise** as is required to recover a debt in an action

---

* Italics throughout, ours.

at law." Accord: *Cameron Estate,* 388 Pa., supra; *Sanders Estate,* 370 Pa., supra; *Braden Estate,* 363 Pa., supra; *Gross's Estate,* 284 Pa., supra; *Gilbraith's Estate,* 270 Pa., supra.

Claimant completely failed to do this. The bulk of the testimony of claimant's witnesses is based only on conjecture and hearsay. Nowhere in the record is there a scintilla of evidence other than loose statements, as to how much time Mrs. Peffley actually devoted to these services. Likewise, there is no evidence as to the value of these services except by one witness who thus testified as to the reasonable value of claimant's services: "I don't believe I am in a position to answer that", and then stated he did not know anyone else who did similar work.*

Furthermore, claimant had the burden of proving *the value* of all the services rendered. In *Lach v. Fleth,* 361 Pa., supra, the Court said (page 348): "Since this suit was based not on an express contract but on a quantum meruit the plaintiff had the burden of proving (1) the performance of the services, (2) the decedent's acceptance of them, and (3) their value."

---

* "Are you able to express an opinion as to the reasonable value of the hourly rate of the services rendered by Mrs. Peffley to Mr. Lebo from November of 1951 to November of 1957? A. I don't believe I am in a position to answer that. I am only acquainted with visits to the bank by Mrs. Peffley. Q. . . . are you able to say what in your opinion the reasonable value of services of that character or of a similar character were in this period on an hourly basis? . . . A. My opinion would be $50 a week. MR. RHOADS: That was not the question. You asked if he was familiar with the compensation in the area and that would call for a yes or no answer. I ask that his answer be stricken out. It is not responsible to the question. MR. HARNER: Q. On how many hours a week do you base that weekly wage? THE COURT: It must go further than that. Do you know anyone else who did similar work and was paid for it? A. No."

An additional reason—although no additional reason is necessary—is that if any compensation was payable, it is presumed payment was made during decedent's lifetime. This presumption is especially strong where decedent had ample funds to pay and claimant herself was in control of ample funds with which to pay any claim she had: *Schleich's Estate*, 286 Pa., supra; *Consentino v. Vittoria*, 394 Pa., supra; *Sanders Estate*, 370 Pa., supra; *Bechdel's Estate*, 344 Pa. 139, 23 A. 2d 859; *Mooney's Estate*, 328 Pa., supra.

Contrary to the majority opinion, this presumption of periodic payments was never intended to be and never has been limited by this Court to domestic servants and nurses. For example, in *McConnell's Appeal*, 97 Pa. 31, the presumption was applied to a *bartender in decedent's tavern*. In *Gilbraith's Estate*, 270 Pa., supra, this Court applied it to the owner of a boarding house and indicated the broad application of the presumption in the following language (page 290): "It is claimed on her behalf that heretofore this presumption has been limited to cases of domestic service. If this was so, we would now unhesitatingly extend it to claims for boarding and nursing also, for in this country the custom is substantially universal to pay therefor at stated periods exactly as it is in cases of servants' wages; and it is at least as unusual for boarding house mistresses to allow payments due for board to accumulate for five or six years, as it is for servants to allow wages so to do. *Presumptions, after all, 'are founded on experience and common observation.* When a connection is found to exist between things, so that when one occurs the other is known always or generally to follow, *this connection becomes the foundation of a legal presumption* of the existence of the latter from the proof of the former' (Cambria Iron Co. v. Tomb, 48 Pa. 387, 391); and hence, *since* 'experience and common observation,' have shown that

periodical payments are 'known . . . generally to follow' exactly the same in each of these classes of cases, on principle the presumption should and does apply equally to each."

In later cases the presumption has been applied where the claim has been based on services performed in connection with a livestock business (*Gross's Estate*, 284 Pa. 73, 130 A. 304), and for services as business adviser, dressmaker, nurse and companion (*Mooney's Estate*, 328 Pa. 273, 194 A. 893).

It is clear that the presumption of periodic payments applies to this case. Claimant has not offered any evidence to rebut this presumption except the inadequate testimony of Mr. Waggoner who prepared decedent's income tax returns. However, an inference of nonpayment cannot be drawn from a failure to include any payments to Mrs. Peffley in decedent's tax return since personal expenses are not deductible by §262 of the Internal Revenue Code, and there is no competent evidence to show that claimant ever rendered any services relating to decedent's grocery business for which a deduction for her compensation would be proper within the provisions of the Internal Revenue Code.

Although no party to this appeal has raised the question of the right or standing of the executor to appeal, that question has now been raised. Since he is a legatee whose legacy would be affected by the allowance of Mrs. Peffley's claim, the appeal may be considered in his individual capacity: *Stachnick Estate*, 376 Pa. 592, 103 A. 2d 765; *Holben's Estate*, 299 Pa. 348, 149 A. 598.

For each and all of the foregoing reasons, I dissent.

Mr. Justice BENJAMIN R. JONES joins in this Dissenting Opinion.