## Rhodes Estate

*Lawrence A. Goldberg*, for accountant.

*Victor Dell'Alba* and *Fred T. Cadmus, III*, for claimant.

## ADJUDICATION

MacELREE, P. J., August 6, 1970.—Decedent, a married man, leaving to survive him a spouse, died March 24, 1968, leaving a will dated September 2, 1960, which was duly probated and upon which letters testamentary were duly granted April 16, 1968, to G. Clinton Fogwell, Jr., alternate executor and trustee.

By the terms of his will, decedent provided, inter alia, as follows:

"A. *If wife survives.* I give one half of my entire estate to my wife, Velma L. Rhodes if she survives me. If she does not survive me said one half share shall be added to the residue of my estate.

"B. *Residue.* I give the residue of my estate to Charles Allen Rhodes (now 4 years of age) of West Grove, Pennsylvania if he survives me. If he does not survive me I give the residue of my estate to Ella R. Freese." . . .

"D. *Appointment of Executor and Trustee.* I appoint Ella R. Freese, executrix, and trustee for minors. If she does not qualify or ceases to act I appoint G. Clinton Fogwell, Jr., of Strafford, Pennsylvania, executor and trustee for minors."

The only question submitted to this court concerns the allowance or disallowance of the claim of Velma L. Rhodes, surviving spouse of decedent, in the amount of $2,100.

In that connection, this court is of opinion that the record, together with the oral testimony presented to the court, justifies the following

## FINDINGS OF FACT

1. Decedent in the year 1967 was the owner of certain premises on which a dwelling house existed.

2. In the early part of that year (the precise date not being proven) Jacob Saull, trading, inter alia, as "Preferred Construction Company" entered into a written agreement with decedent and his wife, Velma L. Rhodes, to apply aluminum siding to said house at a total cost of $2,100, payable upon completion of the work.

3. The work on said premises was completed on or about May 4, 1967, at which time decedent in the presence of Jacob Saull, addressing himself to Velma L. Rhodes, his wife, stated, "Velma, will you give Mr. Saull a check and I will reimburse you later on?"

4. On May 4, 1967, the aforesaid Velma L. Rhodes gave to Jacob Saull her check drawn on the Peoples Bank of Oxford, payable to Preferred Construction Company in the amount of $2,100 in payment for the aluminum siding installation.

5. In order to provide for the payment of said check, Velma L. Rhodes withdrew from her personal savings account at said bank the sum of $1,700 and redepos-

ited it to her checking account at the Peoples Bank of Oxford.

6. Harry A. Rhodes died May 24, 1968.

7. The inventory filed in decedent's estate discloses personal property consisting only of equipment and livestock.

8. Decedent by his will dated September 2, 1960, bequeathed one-half of his entire estate to his wife, Velma L. Rhodes, if she survived him, and the balance of his estate, in trust, to a son, Charles Allen Rhodes, a/k/a Charles Allen Freese, in the event that said son survived decedent, and further provided should he not so survive that the residue should be paid to Della R. Freese.

## DISCUSSION

Based upon the factual situation outlined above, counsel for the trustee for the son contends:

a. There is a presumption of payment of the debt.

b. The legacy to claimant presumptively satisfied any claim she may have against the estate.

Gilbraith's Est., 270 Pa. 288, cited by counsel for the accountant in support of his first contention is, in the opinion of this court, inapposite in that it pertains to a claim for board and nursing.

In the matter of Estate of Edna M. McWreath, dec'd, 49 Wash. 65, it was, we believe, properly held: "The presumption that contributions from son to mother are gratuitous applies to domestic and nursing services rendered, but does not apply to loans of money to the decedent or funds advanced for payment of bills and expenses in connection with care and maintenance or services of a business nature."

We believe it to be the law in Pennsylvania that the doctrine of presumption of payment applies only to claims involving board and nursing or domestic services for which a periodic reimbursement is presumed.

We believe such a distinction to be clearly stated in Lebo Est., 403 Pa. 123, 128.

In support of his second contention, counsel for the accountant and trustee cites Steelman Est., 17 D. & C. 2d 46, 8 Fiduc. Rep. 586.

In Steelman Estate, Judge van Roden takes occasion to cite Dembinski's Estate, 316 Pa. 61, as authority for a so-called "established principle" of law that:

"A legacy to a creditor of a testator equal to or greater in amount than the indebtedness will be presumed, in the absence of anything to indicate a contrary intention, to have been intended as a satisfaction of the debt."

The late Mr. Justice Schaffer, speaking for our Supreme Court, in Dembinski's Estate had taken occasion, however, to point out "In order to consider a legacy as payment of a debt the intention must be clear and certain," and as pointed out by the late Judge Hunter in Patterson Estate, 65 D. & C. 201, 212, that the rule is not founded on reason and courts of justice will lay hold of slight circumstances to get rid of the rule, citing Byrne v. Byrne, 3 S. & R. 54.

Having in mind that the will of decedent was executed September 2, 1960, we are impressed by the logic of the opinion of the late Judge Keller in Hardeman's Estate, 85 Pa. Superior Ct. 313, 315, in which the reasonableness of a claim was not disputed, but the auditor and the court below held that as the legacy given the claimant in the will was greater than the amount of her claim, there could be no award made to her for her services.

To this ruling, Judge Keller, speaking for our Superior Court, said: "We are not able to concur in this ruling, especially as respects the services performed by the claimant after the date of the will."

Further, he states: "It would require a clear intent apparent in the will to make it include payment for services to be rendered in the future," citing Fowler v. Fowler, 3 P. Wms. 354; Cranmer's Case, 2 Salk. 508 and Thomas v. Bennett, 2 P. Wms. 342.

In the matter of Carman v. Carman, 40 D. & C. 2d 756, Judge Davis discusses at length the doctrine to which we have referred, to wit: that a legacy to a creditor of equal or greater value of the debt is presumed to be intended to satisfy the debt, pointing out that generally the courts recognize the existence of the doctrine, but in the next breath they are apt also to observe that the rule is regarded with disfavor and that slight variations suffice to make it inapplicable, quoting a conclusion to the effect that the doctrine, at least in the later cases, has shown such debility that it is probably safe to say that no reliance can be placed on it with any degree of prudence.

He also cites Byrne v. Byrne, 3 S. & R. 52, 60.

He further notes that the rule has been applied directly in but few Pennsylvania cases, inter alia, Steelman Estate, 17 D. & C. 2d 46, 8 Fiduc. Rep. 586, but points out that the majority of Pennsylvania decisions which refer to the rule find, for one reason or another, that it does not apply to the factual situation there presented.

Having fully considered the second contention advanced by counsel for the accountant-trustee, this court is of opinion and so concludes that decedent's will executed in 1960 under the terms of which one-half of his estate was left to his surviving spouse, being precisely her elective share, and the other half to a son, is totally lacking in both clearness and certainty as indicating any intention on decedent's part that such legacy to his wife was intended as

a satisfaction of a nonexisting debt contracted seven years later.

Finding both contentions to be untenable, the claim of Velma L. Rhodes in the amount of $2,100, without interest thereon, is allowed . . .